## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| Brooks M. Witzke, | ) | C.A. No. _____ |
| | ) | |
| Plaintiff, | ) | Non-Arbitration |
| | ) | Demand for Jury Trial |
| v. | ) | |
| THE IDAHO STATE BAR, | ) | |
| Matthew K. Wilde, in his official capacity, | ) | |
| Kurt D. Holzer, in his official capacity, | ) | |
| and | ) | |
| Maureen R. Braley, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Brooks M. Witzke ("Plaintiff") brings this action for Injunctive and Declaratory Relief and related claims pursuant to the Federal Civil Rights Statute 42 U.S.C. §1983, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 CFR Part 35 (hereinafter the "ADA"), and § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq. (hereinafter, the "Rehabilitation Act").

## INTRODUCTION

The right to pursue one's calling free from discrimination and harassment is a fundamental American right. Under federal law, a state cannot arbitrarily and discriminatorily single out and exclude applicants from receiving a professional license as a result of a qualified disability under the ADA, unless that person has been deemed by an expert to be an immediate threat to the health or safety of others. In recent years, the area of attorney licensing has become a cesspool for unlawful discrimination under the ADA where politically unaccountable decisionmakers—usually groups comprised of professionally unsuccessful lawyers—sit on their imaginary throne of dictatorship like a czar as they stigmatize, devaluate, and unnecessarily

1

burden qualified applicants (who are also their prospective competitors) on the basis of an actual or perceived disability. This type of discrimination was the impetus behind Congress' enacting of the ADA in 1990.

Defendants have created and maintain admissions rules that are facially invalid under the ADA, rules that they utilize for the sole purpose of engaging in the very type of discrimination the ADA was enacted to prohibit. Defendants use the rules in question to intentionally discriminate under the guise of determining an applicant's "moral character" through their very shady character and fitness investigations. During these investigations, the Defendants enshroud hearings in a veil of secrecy so they can identify and target select applicants on the basis of their disability. Plaintiff was one of the applicants unfortunate enough to be targeted by Defendants' discrimination, and unless this Court intervenes, he will once again be subjected to the same discrimination in the imminent future.

## THE PARTIES

1.      Plaintiff Brooks M. Witzke is an Idaho resident, a citizen of the United States, a lawyer, a graduate of an ABA accredited law school, and he successfully passed the Delaware Bar Exam in July of 2019. Plaintiff is a person with a disability under the Americans with Disabilities Act and the Rehabilitation Act of 1972, and is otherwise *sui juris*.

2.      The Idaho State Bar ("ISB") is an official arm of the Idaho Supreme Court created by the Court to promulgate The Rules of the Supreme Court relating to admissions to the Bar. The Idaho Supreme Court ("Supreme Court") is established by Article V, Sections 2 and 6 of the Idaho Constitution, and has exclusive jurisdiction to regulate the admission of persons to the practice of law and has delegated its regulatory authority to the ISB, its official arm. Defendant ISB is a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1). Within the ISB are committees (sections of the ISB) that administer the Rules

2

of the Supreme Court relating to admissions to the Bar, these ISB committees are known as the Character and Fitness Committee ("CF Committee") and the Board of Commissioners of the Idaho State Bar ("The Board"). ISB is being sued for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908),* ADA, and Rehabilitation Act exceptions to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

3.     Matthew K. Wilde, ("Wilde") is an Idaho resident currently residing at 6535 W Plantation Lane Boise, ID 83703 and is the Chairman of the CF Committee. Wilde is being sued in his official capacity for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908),* ADA, and Rehabilitation Act exceptions to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

4.     Kurt D. Holzer, ("Holzer") is an Idaho resident currently residing at 1150 W Parkhill Dr. Boise, ID 83702 and is the President of The Board. Holzer is being sued in his official capacity for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908),* ADA, and Rehabilitation Act exceptions to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003).

5.     Maureen R. Braley, ("Braley") is an Idaho resident currently residing at 1002 E Jefferson St Boise, ID 83712 and is the Executive Director of the ISB bar admissions process. Braley is being sued in her official capacity for prospective injunctive and declaratory relief under the *Ex Parte Young, 209 U.S. 123, 159-160 (1908),* ADA, and Rehabilitation Act

exceptions to Eleventh Amendment immunity. *Accord Koslow v. Commonwealth of Pennsylvania*, 302 F. 3d 161, 168 (3rd Cir. 2002); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003). At all relevant times to this Complaint, Braley acted under color of law as an agent or employee of the ISB.

6.      Collectively, The Idaho State Bar, Wilde, Holzer, and Braley will be collectively referred to as "ISB."

7.      Through the Supreme Court, the ISB receives Federal Financial Assistance and Federal Grants in the amount of $2,567,290.10 for the Fiscal Year 2020, $185,663.21 for the Fiscal Year of 2021 and $2,567,673.99 for the Fiscal Year of 2022 so far and is therefore subject to the requirements of Section 504 the Rehabilitation Act of 1973.

8.      At all times pertinent to this Complaint, Witzke was a qualified individual with a disability as Witzke has a (A) a mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; and (C) the Defendants regard him as having such an impairment. Witzke lives with Obsessive Compulsive Disorder ("OCD"), Attention Deficit Hyperactivity Disorder ("ADHD") and mild autism. As a result of these previous diagnoses, Defendants regard Plaintiff as "be[ing] mentally or emotionally unstable to the extent that, in the opinion of the CF Committee or Board, he is not suited to practice law" despite the fact that Plaintiff is more fit and more competent to practice law than any of the Defendants and he possesses more legal talent than all the Defendants combined.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §1331, 1343(a)(3), 18 U.S.C. 1964, and 42 U.S.C. 1988 since this case arises under the laws of the United States and jurisdiction is expressly provided for all claims under 42 U.S.C. 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and its

implementing regulation, 28 CFR Part 35 (hereinafter the "ADA"), and § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 et seq. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

10.     Plaintiff is asking this Court to declare his rights and other legal relations under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

11.     Personal jurisdiction in this judicial district over the Defendants is proper because they all reside in the State of Idaho or have contacts with the State of Idaho, including offices, such that the exercise of personal jurisdiction will not offend the notions of fair play and substantial justice.

12.     Venue is proper in this Court pursuant 28 U.S.C. §1391(b) because the events giving rise to the suit occurred in this judicial District.

## STATEMENT OF FACTS

13.     Plaintiff is a native to Delaware. He first moved to Idaho in 2016 to attend Concordia University School of Law on a full scholarship. After graduating from Concordia third (3rd) in his class—and setting the school record for the most CALI Awards ever earned by a full-time law student—he decided to travel back to Delaware and sit for the Delaware Bar Exam, which is the hardest bar exam in the United States. Plaintiff passed the Delaware Bar Exam on the first try in July of 2019 and he then decided to come back to Idaho to sit for the Idaho exam.

14.     Ironically relevant to this lawsuit, Plaintiff happens to be one of America's leading experts on legal ethics, specifically focusing on bar admissions cases and the constitutionality of bar admissions rules. Plaintiff has argued numerous cases in the Third Circuit, one of which is a pending case that, if successful, will forever impact American Corporation Law as we know it.

15.     When Plaintiff is not busy eating licensure authorities for breakfast, he spends most of his spare time engaging in neuroscience research with a special interest in the advancement of novel treatments to reverse age-related cognitive decline and memory loss resulting from Alzheimer's Disease.

16.     Although Plaintiff may be brilliant, his brilliance has come with a price tag. Plaintiff has struggled with OCD, ADHD, and mild autism his entire life and has felt the effects of social isolation and stigma since childhood. Upon graduating high school, Plaintiff attended criminal justice courses at his local community college, Delaware Technical and Community College ("DTCC") and he sought treatment for his disability. Plaintiff was being treated for his disability with Selective Serotonin Reuptake Inhibitors ("SSRIs") when he began having severe side effects due to an inability to metabolize the medication resulting from a genetic defect, this eventually led to Plaintiff having suicidal thoughts.

17.     During the time of these medication side effects and psychiatric symptoms, including suicidal thinking, Plaintiff began to demonstrate some changes in behavior which was noticed by Del-Tech professors. This transpired during the year 2010. Plaintiff had an excellent relationship with his professors and he confided in his advisor that he was experiencing suicidal thinking and other issues. Del-Tech responded generously and in a caring manner, the institution paid to have Plaintiff examined to make certain that he was not a threat to himself or others. In 2010, Plaintiff underwent an extensive psychological evaluation arranged by Del-Tech. The result of that examination was that Plaintiff did not suffer from any psychological issue that would make him a danger to himself or others. With the help of Del-Tech, Plaintiff was able to identify the offending medication, discontinue it, and he made a full recovery. Plaintiff has been fully stable since 2010.

**The Defendants' Admissions Rules Are The *Paradigm* of An ADA Violation**

18.     On or about February 29, 2020, Plaintiff filed his application to sit for the Idaho

Bar Exam. Idaho's Bar Commission Rules include a list of disqualification criteria that, if called

into question by the Board, *the applicant* bears the burden of dispelling by preponderance of the

evidence. The Rule states, in relevant part:

> The following shall constitute criteria for disqualification of an Applicant on
> character and fitness grounds. Any conduct which, in the judgment of the CF
> Committee or Board, demonstrates that the Applicant has exhibited conduct
> substantially evidencing an inclination to . . .
>
> (H) Fail to exercise substantial self-control, including excessive and continuing
> violation of traffic rules, improper use of drugs or excessive use of alcohol; or
>
> (I) **Be mentally or emotionally unstable** to the extent that, <u>**in the opinion of the
> CF Committee or Board**</u>, the Applicant is not suited to practice law. . . .

I.B.C.R. Rule 210(a)(3)(H), (I). (Emphasis added).

19.     Seriously, Rule 210(a)(3) literally permits unqualified and unsophisticated CF

Committee/Board Members to make generalizations about an applicant's mental health in their

own opinions. <u>Not a single CF Committee/Board Member is a licensed mental health

professional</u> and Rule 210(a)(3) permits them to discriminatorily exclude applicants from their

calling not due to their fitness or competency to practice law, but their prior mental health

diagnoses which the members are allowed to substitute their own personal opinions for that of a

qualified expert. Rule 210(a)(3)(H) and (I) does not require that the Board find, after hearing

from qualified experts, that the applicant "poses a direct threat to the health or safety of others"

which is required under the ADA to exclude a professional license applicant from the practice of

law.

20.     As if I.B.C.R. Rule 210(a)(3)(I) could not be more facially invalid, the

Defendants' internal-written policies for enforcement of I.B.C.R. Rule 210(a)(3)(H), (I) define

what Defendants "in their opinion" consider to be "mentally or emotionally unstable:"

> **Substance abuse**: The current or past dependence upon and treatment for use of alcohol or drugs; and
>
> **Mental health issues**: The current existence of a mental, emotional, or nervous disorder or condition that could affect the applicant's ability to practice law

*See* **Exhibit A** at 14-16; Retrieved on 2-13-2022 from Idaho State Bar Website

https://isb.idaho.gov/wp-content/uploads/lap_survival_guide.pdf

21.     To add insult to injury, I.B.C.R. Rule 204(a) states that "no one shall be licensed

who fails to fully disclose to the Board all information requested of an Applicant on the

Application or by the Board or CF Committee." Therefore, pursuant to Rule 204(a), Defendants

have implemented longstanding practices, and procedures where an applicant is *required* to

disclose the following:

> Substance abuse: The current or past dependence upon and treatment for use of alcohol or drugs; and
>
> Mental health issues: The current existence of a mental, emotional, or nervous disorder or condition that could affect the applicant's ability to practice law

*See Id.* The same authoritative publication by Defendants goes on to state:

> "Fitness" is a person's competence and ability to practice law, both physically and psychologically.
>
> Issues of importance to the BOC include (1) **when was the disease or disorder most recently active or symptomatic**; (2) **has the applicant acknowledged, accepted, and sought assistance for the disease or disorder**; (3) **has the applicant followed through with the recommended treatment for recovery**; (4) **has the applicant recently relapsed**; and (5) **if the applicant relapsed, what did the applicant do in response to the relapse**?

An applicant **who denies a disease or disorder**, does not seek help, does not follow through with a treatment program, fails to disclose information, is devious or dishonest in answering questions, or fails to cooperate with the BOC <mark>can expect a negative result from the review.</mark>

When the Character & Fitness Committee becomes aware of a current chemical dependency or mental illness, it may require an applicant to submit to a professional evaluation.

*Id*.

22.     I.B.C.R. Rule 208 provides unfettered ability to Defendants to delve into the

personal healthcare information, described in the above-referenced paragraphs, at their own

arbitrary leisure:

> **(a)Authority to Investigate.** The Board shall investigate each Applicant's character and fitness to practice law <u>in such manner as the Board deems appropriate.</u>
> **(c)Character and Fitness Examination.** Upon reasonable notice, an Applicant may be required to appear before the Board, CF Committee or Bar Counsel and submit to a character and fitness <u>examination regarding any matter deemed relevant</u> by the Board, CF Committee or Bar Counsel to a proper consideration of the pending Application. The examination shall be reported by a court reporter. The Applicant shall be responsible for the court reporter's fee and transcription costs and shall not be admitted to practice law unless the Bar is reimbursed for such fee and costs. <u>Failure to appear before the Board, CF Committee or Bar Counsel as noticed shall result in denial of the Application.</u>

23.     To further compound this conundrum of disaster, if the Defendants decide, at their

own uneducated whim by way of their own unfettered discretion, that they want an applicant to

undergo psychiatric examination, the *applicant* has to pay for it and cannot be admitted to the

Idaho Bar until they do:

> **(B)Investigation Fee.** In the event the Board or CF Committee determines that an investigation of any Applicant beyond the usual investigation provided for in Rule 208 is required, the Board or CF Committee may require the payment of an additional investigation fee, including but not limited to, <u>the cost of any record or document required by the Board or CF Committee related to its investigation of the Applicant</u>. The Board and CF Committee shall not proceed with further investigation and the <u>Applicant may not be admitted until the additional</u>

<u>investigation fee is paid</u> and the investigation of the Applicant's character and fitness is completed.

I.B.C.R. Rule 203(b)(2)(B).

24.     The lack of rational relation to fitness to practice law is shown in part by the Board not asking applicants with potentially dangerous physical disabilities (including cognitive impairment from diabetes, thyroid/parathyroid disorders, hormone deficiencies, medication side effects, toxic mold exposure/CIRS, hyperammonemia from hepatic encephalopathy, systemic candidiasis, mastocytosis, or a traumatic neurological event) to disclose details regarding their prior diagnoses, treatment or prognosis. Nor does the Board open inquiries into applicants who have undergone chemotherapy for cancer, such treatment having a high incidence of cognitive impairment due to free radical damage and being a valid reason for the suspension of a medical license (*i.e.* "Chemo-Brain"). If such questions were necessary to protect the public, the Board would require individuals with potentially harmful physical disabilities to disclose them.

### The Defendants Engage In Treacherous Discrimination Thinking They Were Immune From ADA Compliance

25.     On or about June 1, 2020 Braley phoned Plaintiff and informed Plaintiff that the CF Committee was having concerns about Plaintiff's mental health diagnoses and she asked Plaintiff if he had a copy of the psychological evaluation performed by Del-Tech back in 2010— which at that time was a decade ago. Plaintiff truthfully stated that he did not have a copy of that decade-old psychological evaluation, that such a document would not be indicative of Plaintiff's present mental fitness, and Plaintiff requested the opportunity to submit to a new psychological evaluation which he would pay for out of his own pocket. Braley then stated "yeah I will let you know but they [the CF Committee/Board] are not wanting someone with your mental issues practicing here."

26.     The Defendants in fact *did not* allow Plaintiff to pay for and submit to a current psychological evaluation before they rendered their decision. On or about June 20, 2020, Wilde, in his capacity as Chairman for the CF Committee, signed a recommendation to deny Plaintiff's admission to the Idaho Bar. On or about June 23, 2020, the Board met and affirmed that recommendation. Plaintiff was denied admission to the Idaho Bar because the Board found, without explanation, Plaintiff to "be mentally or emotionally unstable to the extent that, in the opinion of the Board, the Applicant is not suited to practice law."

27.     On or about June 23, 2020, Braley phoned Plaintiff again and she told Plaintiff that she "submitted your application to the Board and they denied it." When Plaintiff asked the reason Braley said that there were several reasons, but the main reason that ISB denied the application was due to Plaintiff's prior mental health diagnoses. Braley went on to state that in recent years the Idaho State Bar has had to deal with a lot of mental illness, usually in the form of substance abuse, and that the Bar was trying to rid itself of problem attorneys who suffer from prior mental health diagnoses.

28.     Based upon the statements of Braley as well as all objective evidence, it is unmistakably clear that any other issues cited by the Board—during Plaintiff's first ISB application or during the pendency of this case—are a pretext for the discriminatory animus Defendants have towards Plaintiff's mental health diagnoses.

29.     Plaintiff responded that such classification and discrimination is a violation of both the ADA and the Rehabilitation Act and is completely unlawful. Braley then **laughed hysterically** and stated:

> Technically we did discriminate against you [under the ADA/Rehabilitation Act], but the one thing you aren't getting is that the practice of law is not a right it is a privilege so we can do that, and we are statutorily immune from liability under Idaho Code.

30.     The conduct of the Defendants did not come as a complete shock to Plaintiff.  As America's top legal ethics attorney, Plaintiff has studied the composition of licensing authorities from across the Nation, as they were traditionally and in present day. For the past half century or so, the only attorneys that volunteer/work for the ethics/admissions committees are always the people that are unsuccessful in the practice of law, are disliked by their colleagues, and usually have an axe to grind against attorneys who are far more talented than themselves. For example, Matthew K. Wilde has been practicing for over two (2) decades and has never won a single case in his entire career. In fairness, he was only ever docketed for one case, but the ironic thing is that he lost and his filings before the Idaho Supreme Court were so lacking in merit that he was made to pay the opposing sides legal fees. *See City of Boise v. Frazier*, 137 P.3d 388 (Idaho 2006).

31.     Similarly, Ms. Braley was someone who struggled immensely in her legal career before slithering into the Idaho State Bar. Ms. Braley had very short lived careers in both the public and private sectors before being given the opportunity to regulate our profession. From the few pleadings Plaintiff has been able to track down from Braley's short-lived career, it was apparent that the pleadings were in no way indicative of any kind of legal talent. In fact, the pleadings read by Plaintiff would not survive a law school civil procedure class[1].

32.     Plaintiff then Petitioned Defendants for a show cause hearing and retained an attorney, Jason E. Mackrill, to represent him at the show cause hearing. The ISB was represented by Bradley G. Andrews, who was then-bar counsel. The show cause hearing was presided over

---

[1] Please understand that I mentioned these facts about Wilde and Braley without the intention of disparaging or engaging in *ad hominem* attacks. I mention this history only to put the facts of this case in context—as well as the current climate of bar admissions in Idaho—and not in criticism of Wilde and Braley for pursuing their cause.

by retired Idaho Supreme Court Justice Joel Horton, who was appointed as a hearing officer upon request by Plaintiff[2].

33.     The three (3) day show cause hearing commenced on September 16, 2020 and Plaintiff's counsel subpoenaed Braley to testify at the show cause hearing. Braley had full opportunity to explain Defendants' actions and say a final Hail Mary before the tribunal under oath. To the surprise of Plaintiff and his counsel, Braley's testimony was consistent with the phone call between her and Plaintiff where she announced that Defendants denied his application based upon his disability. Braley again reiterated Defendants' position that they were allowed to discriminate against Plaintiff under the ADA because "*the practice of law is not a right it is a privilege*[3]." Mr. Mackrill continued to cross-examine Braley on the overt discrimination and she held nothing back.

34.     Braley admitted that Defendants turned down Plaintiff's offer to have a psychological exam done at his own expense. She further elaborated that most of the time the Defendants would have allowed an applicant to do so. Braley admitted under oath numerous times that the Board rendered its decision based upon Plaintiff's candid disclosures about his prior mental health diagnoses. No other factors were considered in rendering the Board's finding about Plaintiff's mental health.

35.     As a result of the Defendants' discrimination, Plaintiff paid his treating psychiatrist, Dr. Andrew Donohue D.O., to write a letter to the tribunal which declared Plaintiff

---

[2] Let me be as clear as I can possibly be. Justice Horton did not and would not participate in the dishonest and discriminatory actions of Defendants. Unlike the Defendants, Justice Horton is not a failed lawyer; he is a highly respected member of the Idaho State Bar.

[3] "Irrespective of whether the practice of law is a 'right' or 'privilege,' a person cannot be prevented from practicing law except for valid reasons, such practice not being a matter of the state's grace." *SCHWARE v. Bd. OF BAR Exam'rs OF N.M.*, 77 S. Ct. 752, 753 (1957); *See also Willner v. Comm. on Character & Fitness*, 83 S. Ct. 1175, 1179-80 (1963); *Law Students Civ. Rights Research Council, Inc. v. Wadmond*, 91 S. Ct. 720, 731 (1971).

to be a person of good mental health and psychologically stable to the extent that he could competently practice law and represent clients. Dr. Donohue even attested that Plaintiff suffered from no ailment that would inhibit his ability to function in a professional capacity, including the practice of law. This document submitted by Dr. Donohue proves the current absence of untreated, uncontrolled mental disorder that impairs or limits an applicant's ability to practice law in a competent and professional manner to such a degree and extent that the applicant (in this case Plaintiff) can be deemed to "pose a direct threat to the health or safety of others" as defined in the direct threat exception to the ADA.

36.     Plaintiffs' answers and the supporting letter from Dr. Donohue are more than sufficient to allow the Board to assess the mental health of Plaintiff as an applicant for the Idaho Bar. Further, the responses and supporting letter show that Plaintiff has satisfactory mental health under the definition supplied by the Bar. The Board has no evidence to suggest that Plaintiff struggles from an untreated or uncontrolled mental disorder that impairs or limits his ability to practice law in a competent, professional manner to such a degree and extent that the applicant (in this case Plaintiff) can be deemed to "pose a direct threat to the health or safety of others" as defined in the direct threat exception to the ADA

### Braley Bites At The Apple That Will Forever Cloak Herself in Perfidiousness and Ablate The Value of Her Word

37.     Approximately two (2) weeks after the show cause hearing—but before Justice Horton issued his decision—Braley received the transcripts from the hearing and she read over them in attempts to gauge the quality of the case that her and Andrews presented before Justice Horton. Braley learned after reading over the transcripts that her testimony relating to the discrimination against Plaintiff was not well-received by Justice Horton and that Plaintiff was able to provide the declaration from Dr. Donohue. Braley became disconcerted with ISB's

performance at the show cause hearing so she decided to embark on a course of conduct that, if performed by an attorney not employed with Defendants, would likely result in disbarment.

38.     On or about September 30, 2020—over two weeks after the show cause hearing had concluded—Maureen R. Braley initiated contact with the custodian of the 2010 psychological examination performed by Del-Tech. Braley learned the identity of the custodian through self-initiated investigative contacts *after* the show cause hearing. Braley emailed the custodian of the records and <u>falsely stated</u> that she had a valid-signed authorization from Plaintiff to obtain the medical records when in fact she did not. And, Braley knew she did not have valid authorization from Plaintiff when she did so.

39.     On or about October 2, 2020, Bradley G. Andrews submitted a "Motion to Include Additional Application Materials" where he explained that Defendants came into possession of Plaintiff's medical records after the show cause hearing and he wanted to admit 278 pages of records not produced or admitted at the show cause hearing. Plaintiff opposed the motion arguing violation of procedural due process and arguing lack of consent to obtain the medical records.

40.     Astonishingly, Andrews submitted a reply that included a perjured affidavit by Braley. Braley claimed—under oath—that she did not seek the medical records in question but that the record holder initiated first contact with her—having no prior knowledge of Braley's existence or her connection to Plaintiff—and offered to send the (decade-old) records to her for no apparent reason at all. Mind you, these records were held in Delaware over 2,400 miles away. Plaintiff and his attorney were able to locate an email provided from the custodian of the medical records that proved that *Braley initiated first contact* with them via-email requesting the medical records and that her sworn testimony to Justice Horton was fraudulent.

41.     Upon learning of the fraud, Justice Horton struck the medical records from the record, denied Andrews' motion to include the records, and he further ordered a Rule to Show Cause proceeding to make Andrews and Braley explain why he should not sanction them. While the parties were briefing the issue of sanctions, Andrews attempted to reach out to Plaintiff via email, outside the presence of his counsel, asking Plaintiff to provide him with the medical records (the same medical records Andrews blasted before Justice Horton and that Plaintiff only obtained from Andrews' motion to include). Plaintiff had never before seen the medical records in question before Andrews inappropriately inserted them into the show cause proceeding.

42.     Plaintiff then consulted with Jason Mackrill, his counsel, and the two figured out what Andrews was up to. Andrews was trying to get Plaintiff to provide him with the medical records so that he could falsely claim to Justice Horton that Plaintiff provided them "voluntarily." Plaintiff and his counsel then emailed Andrews back and essentially told him to pack sand.

43.     After Andrews' little pharisaism failed, Andrews nevertheless blatantly proceeded to *bear false witness* to Justice Horton by perfidiously asserting that Plaintiff voluntarily provided him the documents. This was an outright lie.

44.     Unfortunately, Justice Horton found that, pursuant to the Idaho Supreme Court's ruling in *Idaho State Bar v. Pangburn (In re Pangburn)*, 154 Idaho 233, 242, 296 P.3d 1080, 1089 (2013) which found that ISB proceedings did not include the full scope of civil procedure rules that court proceedings do, that he did not have jurisdiction to sanction Andrews and Braley under Idaho Rule of Civil Procedure Rule 11(b). However, Justice Horton castigated Andrews in a scathing opinion.

16

45.     Upon information and belief, neither Andrews nor Braley were subject to any consequence by Defendants despite the fact that they committed serious ethics violations. Neither Andrews nor Braley were disciplined in any way because their actions were in-line with Defendants' mission[4] to discriminate against applicants with disabilities, including Plaintiff.

46.     When Justice Horton issued his decision for the show cause hearing, he held that Bar Counsel (not Plaintiff) had the burden of showing that Plaintiff was mentally or emotionally unstable to the extent that he could not practice law. Justice Horton ultimately held that Bar Counsel *did not* meet his burden.

47.     After rendering his final decision, the Board *reversed* Justice Horton and found that Plaintiff was, because of his prior mental health diagnoses, "mentally or emotionally unstable to the extent that, in the opinion of the Board, the Applicant is not suited to practice law." The Board provided no explanation for their overruling of Justice Horton, other than to say that the Board disagreed with Justice Horton about who had the burden of proof. It is Defendants' position that once the Board arbitrarily questions an applicant's mental health based upon their own uneducated opinions, that the applicant has the burden of disproving the inference of being mentally or emotionally unstable.

48.     Plaintiff was denied admission to the Idaho State Bar not because he is morally unfit or incompetent to practice law but because he has a disability. At no time during his

---

[4] Again, I am not trying to engage in discourteous conduct to the Defendants, so I make this statement generally. I spoke before about how admissions/ethics committees are usually comprised of those attorneys who are unsuccessful and disliked in their field. I add to this with a perspective from a book I am writing about legal ethics cases. Did you ever take abnormal psychology in college? You know how people gravitate towards the fields that provide exposure to someone's inner demons? (*i.e.* pedophiles are drawn to becoming school teachers/principals, thieves and kleptomaniacs are drawn to security and law enforcement, pyromaniacs/arsonists become firefighters, etc.). In my book, I include the theory that those attorneys who are drawn to a state's bar/office of disciplinary counsel, positions such as bar counsels, admissions directors, disciplinary committees, etc., are some of *the most dishonest attorneys* you will ever encounter in our profession. I have interviewed ethics attorneys from across America as well as disbarred attorneys and all have confirmed my theory; people in these positions engage in conduct that the most unscrumptious lawyer in any given legal community would refrain.

application process or in the present does Plaintiff suffer from any psychological morbidity that would "pose a direct threat to the health and safety of others" as defined in the direct threat exception to the ADA. Furthermore, any other reasons offered by Defendants for Plaintiff's denial are pretextual—the real reason was Plaintiff's medical diagnoses as Braley truthfully stated.

49.     Plaintiff has immediate plans to reapply to sit for the Idaho Bar Exam and to sit for the July, 2022 bar exam. Plaintiff plans to reapply before the application deadline of March 1, 2022. As a result of Defendants' unlawful discrimination as well as their illegal bar admissions rules, Plaintiff will be subjected to the same discrimination he was subjected to during his 2020 application in the absence of Court-ordered relief.

50.     Even though the Board (or any of the Defendants, for that matter) has no evidence to suggest that Plaintiff currently poses a direct threat to the public because of his mental diagnoses, Plaintiff knows for a fact that this time around the Board will require him to submit to invasive procedures and to expend funds not because the requirements serve a purpose in determining his fitness to practice law but only because he has a disability.

51.     The Defendants have no direct or reliable evidence to suggest that Plaintiff currently suffers from an untreated or uncontrolled mental disorder that impairs or limits his ability to practice law in a competent, professional manner to such an extent and degree that Plaintiff "pose[s] a direct threat to the health and safety of others" as defined in the direct threat exception to the ADA.

52.     Pursuant to Braley's admissions, notwithstanding their full and complete knowledge regarding the likelihood of violation of Plaintiff's rights under the Americans with

Disabilities Act and the Rehabilitation Act of 1973, Defendants continue to enforce their discriminatory rules, policies, and procedures against Plaintiff.

53.     Defendants' discriminatory conduct against Plaintiff was deliberate and intentional, and/or in reckless disregard of Plaintiff's rights.

54.     Plaintiff will be obligated to retain counsel for the prosecution of this action and is entitled to recover those attorneys' fees, expert fees, costs and expenses incurred in this case.

## COUNT I- VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. §§ 12131-12134--28 C.F.R. §§35.130(b)(1), (b)(6), (b)(8)

55.     Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

56.     Under Title II of the Americans with Disabilities Act, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

57.     Under Title II, a public entity is prohibited from administering "a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. §§35.130(b)(1), (b)(6), (b)(8).

58.     Under the regulations pursuant to the ADA, a public entity, such as the ISB, shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

59.     I.B.C.R. Rule 210(a)(3)(H), (I), Rule 208(a), Rule 204(a), and corresponding investigation practices, policies, and procedures violate Title II of the ADA by subjecting

applicants with mental health histories to further scrutiny because the Board believes that such applicants might pose a direct threat to the public, not because the Board has objective evidence to suggest that the applicants do, in fact, pose such a risk.

60.     I.B.C.R. Rule 210(a)(3)(H), (I), I.B.C.R. Rule 208(a), (c), I.B.C.R. Rule 204(a), and corresponding investigation practices, policies, and procedures violate Title II of the ADA because they substitute an impermissible inquiry into the status of disabled applicants for a proper inquiry into the applicant's conduct, forcing qualified applicants to reveal highly personal and potentially embarrassing information that is not relevant to their present fitness to practice law.

61.     Absent specific conduct that raises legitimate questions about an applicant's fitness to practice law, such an inquiry into the applicant's mental health can only be justified by the discriminatory assumption that the prior diagnosis and/or treatment for a mental health disorder, in and of itself, poses a direct threat to the public.

62.     I.B.C.R. Rule 210(a)(3)(H), (I), I.B.C.R. Rule 208(a), (c), I.B.C.R. Rule 204(a), and corresponding investigation practices, policies, and procedures are not rationally related or necessary to the Board's purported obligation to protect the public. If they were, licensed attorneys in the State of Idaho would be required to provide similar information as a condition of continued licensure. No such requirement exists.

63.     I.B.C.R. Rule 210(a)(3)(H), (I), Rule 208(a), (c), Rule 203(b)(2)(B) and corresponding investigation practices, policies, and procedures violate Title II of the ADA because they require an applicant to submit to invasive procedures and to expend his or her personal funds not because the requirements serve a purpose in determining his/her fitness to

practice law but only because he/she has a disability. Plaintiff was and will be adversely impacted by these discriminatory requirement(s).

64.     By demanding psychiatric records of treatment, the ISB unlawfully obtained/obtains information that contains information of an extremely personal nature which is irrelevant to the applicant's ability to practice law. Plaintiff has personally suffered as a result of this discriminatory practice, he had his highly personal information disseminated via-email to a bunch of his would be competitors who had no business possessing such information, this was humiliating and egregious; exceeding all bounds of decency usually tolerated in a civilized society!  *See State (Office of Mental Health Buffalo Psychiatric Ctr.) v. Civil Serv. Emps. Asso.*, 104 Misc. 2d 1086, 1088-1089 (Sup. Ct. 1980)(in a case involving access to psychiatric records during an administrative proceeding, a court ruled: "The Fourth Amendment as creating a right to privacy, [is] no less important than any other right carefully and particularly reserved to the people . . . If a citizen's home and sex life are considered to be deserving of special protection, one must ask how much greater protection should be afforded the very private reflections of the human mind ensconced within the records sought herein.").

65.     In the absence of any evidence suggesting that Plaintiff is a direct threat to the health or safety of others, ISB required, and will require, Plaintiff to submit to the evaluations based on its speculation that Plaintiff's diagnosis and treatment may create a risk to the public.

66.     By disregarding Plaintiff's qualified mental health professionals, and then requiring Plaintiff to submit to an interrogation during a hearing before the ISB where they question Plaintiff on his disability, the ISB subjected Plaintiff to an unlawful surcharge.

67.     Notwithstanding Plaintiff can safely practice law despite the existence of past or current mental health issues and has a history of help-seeking behaviors, Plaintiff is at risk of

being subjected to the very same discrimination that happened during his first application

process. Plaintiff will be subjected to labeling and stigmatization based solely on the fact that he

has a disability and not because there is objective evidence that Plaintiff, if admitted, would pose

"a direct threat to the health or safety of others." In the absence of Court-ordered relief, Plaintiff

will be forced to endure unlawful harassment, be forced to expend funds and submit to invasive

procedures, and have his admission to the Bar delayed so that Defendants can interrogate

Plaintiff during another show cause hearing. Non-disabled applicants are not required to

participate in this process, which is not necessary or reasonably related to the Board's purported

obligation to protect the public.

68.     Plaintiff does not in any way pose a direct threat to the health or safety of others

and Plaintiff is entirely fit to practice law in a competent manner. Allowing a cartel of legally-

unsophisticated decisionmakers to inflict indiscriminate harm against a would be competitor

based upon nothing more than the subjective biases of the group about a particular medical

diagnosis is the *hallmark* of discrimination prohibited under the ADA. Both the CF Committee

and the Board is comprised of members who are essentially clueless about anything to do with

medicine.

69.     The text of I.B.C.R. Rule 210(a)(3)(I) is facially invalid under the ADA. By its

very text, the Rule grants the Board the ability to discriminate in a way that the ADA specifically

prohibits. The Rule states that a reason for automatic disqualification is as follows:

> Be **mentally or emotionally unstable** to the extent that, **in the opinion of the CF Committee or Board**, the Applicant is not suited to practice law

The Rule *literally* empowers the CF Committee or Board the unfettered discretion to block an

applicant from the practice of law as a result of their **mental or emotional** conditions premised

on nothing more than the "**opinion**" of a group of incompetent-would be competitors. The Rule

does not require that there be an objective finding, based upon objective evidence, that the

Applicant, if admitted, would pose "a direct threat to the health or safety of others."

70.     As if I.B.C.R. Rule 210(a)(3)(I) could not be more facially invalid, the

Defendants' internal-written policies for enforcement of I.B.C.R. Rule 210(a)(3)(H), (I) define

what Defendants "in their opinion" consider to be "mentally or emotionally unstable:"

> **Substance abuse**: The current or past dependence upon and treatment for use of alcohol or drugs; and

> **Mental health issues**: The current existence of a mental, emotional, or nervous disorder or condition that could affect the applicant's ability to practice law

*See* **Exhibit A** at 14-16; Retrieved on 2-13-2022 from Idaho State Bar Website

https://isb.idaho.gov/wp-content/uploads/lap_survival_guide.pdf

71.     Although I.B.C.R. Rule 210(a)(3) references "conduct" evidencing mental illness,

the text of the Rule is nevertheless invalid because it does not explain what types of conduct

qualify. There are no guidelines and criteria for assessing the type of conduct evidencing "mental

and emotional instability," instead the Board members can choose, case by case, what evidences

instability. In fact, based upon the preceding paragraph the Board does not consider conduct at

all but instead labels applicants based upon prohibited criteria.

72.     To really drive this point home, Maureen R. Braley *admitted* numerous times that

the Defendants denied Plaintiff's admission to the Idaho State Bar under I.B.C.R. Rule

210(a)(3)(I) not because the Board found based upon objective evidence that Plaintiff would

pose "a direct threat to the health or safety of others" but only because Plaintiff has a disability in

the form of a psychiatric diagnosis. Braley made these confessions under the mistaken belief that

Defendants could immune themselves from liability under the ADA by court rule.

73.    I.B.C.R. Rule 210(a)(3)(H), (I), when applied in conjunction with I.B.C.R. Rule 224(c), is invalid under the direct threat exception to the ADA which places the burden on the *offending entity* to show that the Applicant poses "a direct threat to the health or safety of others." Defendants interpret I.B.C.R. Rule 224(c) and I.B.C.R. Rule 210(a)(3)(H), (I) as placing the burden *on the Applicant* whenever the Defendants decide at their own arbitrary leisure to target Applicants on the basis of their disability. The Defendants ratified this unlawful practice when they over-ruled Justice Horton on the basis that Plaintiff (the Applicant) had the burden of proof.

74.    The ISB policies, practices, and procedures are individually and collectively hostile and discriminatory to individuals with disabilities such as Plaintiff. The policies, procedures, and discriminatory actions, referenced above, are unnecessary, overbroad, and not rationally related to the ISB's purported obligation to protect the public.

75.    The lack of rational relation to the practice of law is demonstrated by the fact that the mental health status for applicants for the Idaho Bar is vastly different from current members of the Idaho Bar that suffer from mental illness or substance abuse.  There is no legitimate basis to distinguish an applicant with mental illness or a history of substance abuse pre or post admission to the Idaho Bar.

76.    Additionally, the lack of rational relation is demonstrated by the Board not asking applicants with potentially dangerous physical disabilities (including cognitive impairment from diabetes, thyroid disorders, vitamin or hormone deficiencies, medication side effects not involving psychiatric medicines, toxic mold exposure/CIRS, or a traumatic neurological event) to disclose details regarding their prior diagnoses, treatment or prognosis. Nor does the Board open inquiries into applicants who have undergone chemotherapy for cancer, such treatment

having a high incidence of cognitive impairment and being a lawful basis for the suspension of a medical license. If such questions/inquiries were necessary to protect the public, the Board would require individuals with potentially harmful physical disabilities to answer them.

77.     At all times pertinent to this Complaint, the Board's discriminatory actions have been willful, intentional, and in conscious disregard for the ADA, as fully set forth herein.

78.     As a result of the ISB's discriminatory acts, Plaintiff has suffered and continues to suffer irreparable damage that cannot be adequately compensated through remedies at law.

79.     An injunction is necessary to balance the hardships, which are grossly disproportionate, as the Board Rules and policies are illegal and inconsistent with the purpose and protections of the ADA.

80.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff the injunctive relief requested herein.

**WHEREFORE**, Plaintiff, Brooks M. Witzke, respectfully demands judgment against Defendants, THE IDAHO STATE BAR, Matthew K. Wilde, in his official capacity, Kurt D. Holzer, in his official capacity, and Maureen R. Braley, in her official capacity, for the following injunctive and declaratory relief:

A.  Finding that I.B.C.R. Rule 210(a)(3)(H) and (I) are unlawful eligibility bars based on disability and Ordering Defendants to cease enforcement of this provision solely based on a history of disability instead of conduct that would demonstrate that an applicant, if admitted, would pose "a direct threat to the health or safety of others;"

B.  Finding that the practices relating to the investigation of persons' disabilities is an unlawful eligibility bar, and Ordering Defendants to cease demanding detailed medical documentation of an applicant's psychiatric history, subjecting applicants, who may or may not have their own treating professional, to additional psychiatric examinations, or subject applicants to interrogation at a hearing by the ISB regarding their mental health;

C.  Finding that the practices subjecting persons with disabilities to additional costs solely because of their disability status, such as costs of investigations, examinations, hearings,

and conditional admissions, are discriminatory surcharges based on disability, and ordering Defendants to cease surcharging applicants because of their disability status;

D.  Finding that Witzke's history of mental illness places him at risk for future discrimination as described in this Complaint, and find that the Defendants' practices regarding those with mental illness, as shown above, place unlawful and discriminatory eligibility conditions upon a person with a disabilities right to practice;

E.  Issue a permanent injunction prohibiting the Defendants from enforcing I.B.C.R. Rule 210(a)(3)(H) and (I) in a way that is prohibited under the ADA;

F.  Awarding Plaintiff his reasonable costs and attorneys' fees;

G.  Awarding such other relief the Court deems proper; and

H.  Retaining jurisdiction of this case until the Defendants have fully complied with the orders of this Court.

## COUNT II – VIOLATION OF THE REHABILITATION ACT OF 1973

81.     Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

82.     Pursuant to 42 U.S.C. § 2000d-7(a)(1), "[a] state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . , or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

83.     Section 2000d-7 unambiguously conditions the receipt of federal funds on the waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act.

84.     Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination against people with disabilities by recipients of federal funding, and provides that "no otherwise qualified handicapped individual … shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

85.     WITZKE is otherwise qualified under the Rehabilitation Act because he meets the essential eligibility requirements to participate in the Defendants' services, programs, and activities.

86.     Because they are a recipient of federal financial assistance, the Defendants are subject to the requirements of the Rehabilitation Act, and it's implementing regulations.

87.     ISB's actions, or omissions to act, described above violated WITZKE'S rights under the Rehabilitation Act by discriminating against him on the basis of a disability.

88.     ISB's discriminatory conduct against WITZKE was deliberate and intentional, and/or in reckless disregard of WITZKE' rights.

89.     WITZKE has suffered damages due to the Defendants' violations of the Rehabilitation Act.

90.     WITZKE will be obligated to retain counsel for the prosecution of this action and is entitled to recover those attorney fees, expert fees, costs and expenses incurred in this case from the Defendants pursuant to 29 U.S.C. § 794(b).

**WHEREFORE**, Plaintiff, Brooks M. Witzke, respectfully demands judgment against Defendants, THE IDAHO STATE BAR, Matthew K. Wilde, in his official capacity, Kurt D. Holzer, in his official capacity, and Maureen R. Braley, in her official capacity, for the following injunctive and declaratory relief:

A.  Finding that I.B.C.R. Rule 210(a)(3)(H) and (I) are unlawful eligibility bars based on disability and Ordering Defendants to cease enforcement of this provision solely based on a history of disability instead of conduct that would demonstrate that an applicant's unfitness to practice law;

B.  Finding that the practices relating to the investigation of persons' disabilities is an unlawful eligibility bar, and Ordering Defendants to cease demanding detailed medical documentation of an applicant's psychiatric history, subjecting applicants, who may or

may not have their own treating professional, to additional psychiatric examinations, or subject applicants to interrogation at a hearing by the ISB regarding their mental health;

C. Finding that the practices subjecting persons with disabilities to additional costs solely because of their disability status, such as costs of investigations, examinations, hearings, and conditional admissions, are discriminatory surcharges based on disability, and ordering Defendants to cease surcharging applicants and attorneys because of their disability status;

D. Finding that Witzke's history of mental illness places him at risk for future discrimination as described in this Complaint, and find that the Defendants' practices regarding those with mental illness, as shown above, place unlawful and discriminatory eligibility conditions upon a person with a disabilities right to practice;

E. Awarding WITZKE compensatory damages from the Idaho State Bar for the intentional deprivation of his rights;

F. Awarding Plaintiff his reasonable costs and attorneys' fees;

G. Awarding such other relief the Court deems proper; and

H. Retaining jurisdiction of this case until the Defendants have fully complied with the orders of this Court.


## COUNT III- VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER U.S. Const. Amendment XIV (Rational Basis Test)(The Idaho State Bar Defendants, Only)

*If our ability to practice in our calling was left to the arbitrary and discriminatory whim of what our competitors (or prospective competitors) subjectively believe of our psychological well-being, only the most competent and skilled attorneys would be excluded.*

91.     Plaintiff re-alleges and incorporates by reference all allegations and Paragraphs of this entire Complaint, above and below, as though fully set forth herein.

92.     As a result of Defendants' acts, practices, customs, laws, and rules, Plaintiff has been deprived of his due-process rights under the Fourteenth Amendment of the United States Constitution and subject to 42 U.S.C. § 1983.

93.     Government laws, policies, rules and/or procedures that discriminate against citizens on the basis of disability fall under rational basis review. Under rational basis review, a law will be upheld only when it is rationally related to a legitimate government purpose.

94.     I.B.C.R. Rule 210(a)(3)(H) and (I) are not rationally related to a legitimate government purpose. Although ensuring the competence of practitioners in the State of Idaho is undoubtedly a legitimate government purpose, the Rules are not rationally related to that purpose because there is no legitimate purpose for a law that enables professionally unsuccessful lawyers who are not qualified medical experts to bar a prospective competitor from his or her calling solely on the basis of a disability that does not in any way impact ones' fitness to practice law in a competent manner. The Rules in question do not require the Defendants to render a decision based upon any objective evidence, but instead empower the Defendants to declare an Applicant unfit to practice law based on nothing more than the personal opinion of persons who know nothing about psychology/psychiatry.

95.     If this feckless, random, and arbitrary vetting was in fact rationally related to ISB's interest in regulating the practice of law in Idaho, then such a rule would exist for those **who actually practice law in the State**. Such a rule allowing practicing attorneys to be disbarred based upon nothing more than the subjective beliefs of their competitors does not exist. There is no rational basis why a state bar should exclude an Applicant from the practice of law for a qualification that is not imposed upon those who practice law in the State as a condition of continued licensure; there is no reason to hold someone who merely *aspires* to practice to a standard not imposed upon those who *actually practice*.

96.     Defendants should not be allowed to use an Applicant's medical diagnoses as a rapier throughout the admissions process and then sheath it when the Rule would be applied to the incumbents--themselves. Such one-sided swordsmanship should not be permitted.

97.     The lack of rational relation to the practice of law is demonstrated by the fact that the mental health status for applicants for the Idaho Bar is vastly different from current members of the Idaho Bar that suffer from mental illness or substance abuse.  There is no legitimate basis to distinguish an applicant with mental illness or a history of substance abuse pre or post admission to the Idaho Bar.

98.     Additionally, the lack of rational relation is demonstrated by the Board not asking applicants with potentially dangerous physical disabilities (including cognitive impairment from diabetes, thyroid disorders, vitamin or hormone deficiencies, medication side effects not involving psychiatric medicines, toxic mold exposure/CIRS, or a traumatic neurological event) to disclose details regarding their prior diagnoses, treatment or prognosis. Nor does the Board open inquiries into applicants who have undergone chemotherapy for cancer, such treatment having a high incidence of cognitive impairment and being a lawful basis for the suspension of a medical license. If such questions/inquiries were necessary to protect the public, the Board would require individuals with potentially harmful physical disabilities to answer them.

99.     The Rules are not rationally related to a legitimate government interest and are discriminatory, arbitrary, and oppressive. The Rules serve merely as tools to identify and filter out applicants to the Bar in ways that violate the ADA as well as the Rehabilitation Act, this is not a legitimate government purpose.

WHEREFORE, Plaintiff requests that the Court (i) declare that I.B.C.R. Rule 210(a)(3)(H) and (I) violate the 14th Amendment Substantive Due Process Clause of the United

States Constitution; (ii) issue a permanent injunction preventing the Idaho State Bar from enforcing the Rules; and (iii) award Plaintiff any other relief that the Court determines is appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,

DATE: February 23, 2022

_____/S/_____
Brooks M. Witzke, *Pro Se*
LAWMAN LLC
P.O. Box #85
Lava Hot Springs, Idaho 83246
302-604-4925
BrooksWitzke@Witzkelaw.com