# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| BROOKS M. WITZKE, | Case No. 1:22-cv-00090-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **DEFENDANTS' MOTION TO DISMISS (Dkt. 8)** |
| | **PLAINTIFF'S MOTION TO WAIVE JURY DEMAND (Dkt. 13)** |
| IDAHO STATE BAR, MATTHEW K. WILDE, in his official capacity, KURT D. HOLZER, in his official capacity, and MAUREEN R. BRALEY, in her official capacity, | **PLAINTIFF'S MOTION TO STRIKE (Dkt. 15)** |
| | **PLAINTIFF'S MOTION TO AMEND (Dkt. 30)** |
| Defendants. | **PLAINTIFF'S MOTION TO FILE A SUR-REPLY (Dkt. 38)** |
| | **PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (Dkt. 53)** |

Pending is the Defendants' Motion to Dismiss (Dkt. 8), Plaintiff's Motion to Waive Jury Trial Previously Demanded and for Case to Proceed as a Bench Trial ("Motion to Waive Jury Demand") (Dkt. 13), Plaintiff's Motion to Strike Defendants' Motion to Dismiss and Motion for an Order to Show Cause for Civil Contempt ("Motion to Strike") (Dkt. 15), Plaintiff's Motion to Amend (Dkt. 30), Plaintiff's Motion for Leave to File a Sur-reply ("Motion for Sur-reply") (Dkt. 38), and Plaintiff's Motion for Leave to File Evidence of *England* Reservation in State Court Appeal ("Motion for Judicial Notice") (Dkt. 53). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 25). For the reasons stated below, Plaintiff's Motion to Waive Jury Demand, Motion to Strike, Motion to Amend, and Motion for

**ORDER - 1**

Sur-reply are denied; Plaintiff's Motion for Judicial Notice is granted in part and denied in part; and Defendants' Motion to Dismiss is granted.

## I.   <u>BACKGROUND</u>

This case concerns whether bar admission rules enforced by Defendants are facially invalid under the Americans with Disabilities Act ("ADA"), Rehabilitation Act of 1973 ("RA"), and the Fourteenth Amendment to the United States Constitution.

Defendants are the Idaho State Bar (the "ISB") and three ISB officials, sued in their official capacities.  The ISB, through its Board of Commissioners (the "Board"), assists the Idaho Supreme Court in administering the practice of law in the state by promulgating bar admission rules (subject to the Supreme Court's approval), investigating and examining bar applicants to ensure they possess the requisite character and fitness to practice law, and certifying a list of qualified applicants to the Supreme Court for admission.  *See* IDAHO CODE §§ 3-101, -408; Compl. ¶ 2 (Dkt. 1).  To aid its review of applicants' character and fitness, the ISB created the Character and Fitness Committee ("CF Committee"), which reviews applications referred to it and makes admission recommendations to the Board.  I.B.C.R.[1] 209, 903(f).

Plaintiff Brooks M. Witzke is a Delaware native who attended Concordia University School of Law in Boise, Idaho.  Compl. ¶ 1 (Dkt. 1).  Plaintiff suffers from several mental health diagnoses, which he manages with professional treatment.  *Id.* ¶¶ 35-36.  Despite this, he performed well in law school, earning multiple CALI Awards[2] and graduating third in his class in 2019.  *Id.* ¶ 13.  After graduation, Plaintiff applied to sit for the July 2020 Idaho bar exam.  *Id.*

The ISB denied his application.  *Id.* ¶ 26.  Plaintiff alleges that the ISB concluded he was

---

[1] Citations to "I.B.C.R. __" refer to the Idaho Bar Commission Rules.
[2] A CALI award recognizes a law student that has received the highest score in a law school course.

ORDER - 2

"mentally or emotionally unstable to the extent that, in the opinion of the [the ISB], the Applicant is not suited to practice law." *Id.* ¶¶ 13, 26.

Plaintiff contested the ISB's decision denying his application and petitioned for a show cause hearing under Idaho Bar Commission Rule 215. *Id.* ¶ 32. He alleges that Defendants engaged in a variety of discriminatory and unlawful conduct before, during, and after the hearing. *See id.* ¶¶ 25-49. Among other things, he alleges that Defendants admitted to ADA violations; surreptitiously obtained Plaintiff's psychiatric records from another state; and perjured themselves. *Id.* ¶¶ 25, 33-43. Although the hearing officer held that the ISB had not carried its burden to establish that Plaintiff was mentally or emotionally unstable to the extent that he could not practice law, the ISB did not change course and affirmed its denial of his application on character and fitness grounds. *Id.* ¶ 47. Plaintiff appealed to the Idaho Supreme Court, which affirmed the ISB's decision on February 4, 2022.[3]   Mem. in Supp. of Mot. to Dismiss, Ex. A (Dkt. 8-2). He subsequently reapplied to sit for the Idaho bar exam.[4]   Compl. ¶ 49 (Dkt. 1).

Less than a month after the Supreme Court denied his first bar application, Plaintiff initiated this action. *See generally id.* He alleges that the denial of his first bar application demonstrates that Defendants administer a discriminatory and unlawful system of reviewing bar applications, including engaging in practices and enforcing bar admission rules that are facially

---

[3] The Court takes judicial notice of the Idaho Supreme Court's decision under Federal Rule of Evidence 201(b)(2). The decision to take notice of the Supreme Court's decision is discussed in full below at section A.2. The Court also takes notice of an excerpt from Plaintiff's briefing before the Idaho Supreme Court on the same basis. *See* Mot. for Judicial Notice, Ex. A (Dkt. 53-2).

[4] Plaintiff initially applied to sit for the July 2022 bar exam. However, his application was deferred to the February 2023 bar exam. Plaintiff challenged this decision in a related case, *Witzke v. Idaho State Bar, et al.*, Case No. 4:22-cv-00253-REP. That case was voluntarily dismissed without prejudice following an agreement between the parties.

invalid under federal statutes and the Constitution.  *See* Compl. at p. 2 (Dkt. 1); *see also id.* ¶¶
49-52.  He asserts claims for (i) violation of Title II of the ADA, (ii) violation of Section 504 of
the RA, and (iii) deprivation of substantive due process rights under the Fourteenth Amendment.
*Id.* ¶¶ 55-99.  Plaintiff requests that the Court declare several bar admission rules facially invalid
under the ADA, RA, and Fourteenth Amendment and enjoin Defendants from enforcing them.
*Id.*  Specifically, Plaintiff challenges Idaho Bar Commission Rules 204, 208, 210(a)(3)(H), and
210(a)(3)(I) (collectively "the Challenged Rules").

Rules 204 and 208 delineate Defendants' ability to investigate bar applicants.  In
pertinent part, Rule 204 states:

> (a) **Disclosure**. No one shall be licensed who fails to fully disclose
> to the Board all information requested of an Applicant on the
> Application or by the Board or CF Committee.

> (b) **Complete Application**. An Application is considered complete
> when the Bar is satisfied that it has received full and sufficient
> responses to every question in the Application and all required or
> requested supporting information and documentation.

I.B.C.R. 204.  Correspondingly, Rule 208 states in relevant part:

> (a) **Authority to Investigate**. The Board shall investigate each
> Applicant's character and fitness to practice law in such manner as
> the Board deems appropriate.

> (b) **Reference of Application for Investigation**. The Board may
> refer any Application to the CF Committee or Bar Counsel for the
> purpose of investigating and making recommendations on any
> matter connected with the Application.

> (c) **Character and Fitness Examination**. Upon reasonable notice,
> an Applicant may be required to appear before the Board, CF
> Committee or Bar Counsel and submit to a character and fitness
> examination regarding any matter deemed relevant by the Board,
> CF Committee or Bar Counsel to a proper consideration of the
> pending Application. The examination shall be reported by a court
> reporter. The Applicant shall be responsible for the court reporter's
> fee and transcription costs and shall not be admitted to practice law

**ORDER - 4**

>  unless the Bar is reimbursed for such fee and costs. Failure to
>  appear before the Board, CF Committee or Bar Counsel as noticed
>  shall result in denial of the Application.

I.B.C.R. 208.

Rule 210 – and relevant here, subsections 210(a)(3)(H) and 210(a)(3)(I) – in turn, lists

standards for disqualification.  Rule 210 provides:

>  (a) The following shall constitute criteria for disqualification of an
>  Applicant on character and fitness grounds. . .
>
>>  (3) Any conduct which, in the judgment of the CF
>>  Committee or Board, demonstrates that the Applicant has
>>  exhibited conduct substantially evidencing an inclination
>>  to. . .
>>
>>>  (H) Fail to exercise substantial self-control,
>>>  including excessive and continuing violation of
>>>  traffic rules, improper use of drugs or excessive use
>>>  of alcohol; or
>>>
>>>  (I) Be mentally or emotionally unstable to the extent
>>>  that, in the opinion of the CF Committee or Board,
>>>  the Applicant is not suited to practice law[.]

I.B.C.R. 210.

Together, Plaintiff alleges that the Challenged Rules are facially invalid because (i) they

allow Defendants to subject mentally disabled bar applicants to intrusive and embarrassing

investigations into their mental health; (ii) require such applicants to pay out-of-pocket for

additional investigation fees, including the cost of a psychiatric examination; (iii) afford

Defendants the discretion to deny the applications of such applicants based on nothing more than

a prior mental health diagnosis and the Defendants' subjective opinion that the applicant is

mentally or emotionally unstable (instead of an objective determination by medical professionals

that the applicant poses a direct threat to the health and safety of others); and (iv) are not

rationally related to the legitimate government purpose of ensuring competence of practitioners,

as evidenced by the lack of corresponding invasive inquiries for applicants with potentially dangerous physical disabilities and practicing lawyers who suffer from mental illness or substance abuse.  *See generally* Compl. (Dkt. 1).

Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Mot. to Dismiss (Dkt. 8).  In support of their Motion, Defendants requested that the Court take judicial notice of an Idaho Supreme Court decision affirming the denial of Plaintiff's first bar application ("the Supreme Court Decision" or "the Decision").  Mem. in Supp. of Mot. to Dismiss at 5 n.2 (Dkt. 9-1).  Generally speaking, Defendants argued that the Court lacks subject-matter jurisdiction over this matter, Plaintiff's claims were barred by res judicata, and Plaintiff could not meet the high burden required of a facial challenge.  *See id.*

Plaintiff moved to strike the Motion to Dismiss, arguing that, because it relied on the Supreme Court Decision, it was "premised upon a storyline and main theme that relies on facts— and inserts extraneous documents—outside the pleadings."[5]  Mem. in Supp. of Mot. to Strike at 2 (Dkt. 15-1).  In the alternative, at the motions hearing, Plaintiff requested an opportunity to submit rebuttal evidence if the Court took judicial notice of the Supreme Court Decision.  He subsequently filed a Motion for Judicial Notice, seeking to have the Court take notice of a portion of his briefing before the Idaho Supreme Court relating to the *England* Reservation Doctrine.  Mot. for Judicial Notice (Dkt. 53).

Plaintiff also filed two motions that sought the same result—having this matter proceed to a bench trial as opposed to the previously demanded jury trial.  *See* Mot. to Waive Jury

---

[5] Along with his Motion to Strike, Plaintiff also moved the Court for an order requiring Defense Counsel "to show cause why he should not . . . be held in civil and/or criminal contempt[.]" Mot. to Strike at 1 (Dkt 15).  At the October 25, 2022, motions hearing Plaintiff moved to withdraw his motion for a "show cause" order.  Defendants did not oppose Plaintiff's motion to withdraw.  As such, the motion is granted.

Demand (Dkt. 13); Motion to Amend (Dkt. 30).  Finally, Plaintiff filed a motion to file a sur-reply to Defendant's Reply in Support of the Motion to Dismiss, contending that the Defendants had raised new arguments in that memorandum.  Mot. for Sur-reply (Dkt. 38).

On October 25, 2022, the Court heard oral argument on the Motion to Dismiss, Motion to Strike, and Motion to Amend. The Court finds that the other motions can be resolved on the briefing and existing record.  Now, having thoroughly reviewed the record, considered oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## II.  DISCUSSION

### A.  Plaintiff's Motion to Strike is denied.

Although Plaintiff's motion has blended the applicable standards, his arguments implicate two discrete legal questions: (i) whether the Court may take judicial notice of the Supreme Court Decision and (ii) whether that Decision (and the Motion to Dismiss) may be stricken.

### 1.  Legal Standard

A court may take judicial notice of "a fact that is not subject to reasonable dispute" because the fact is "generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  State agency records and "other undisputed matters of public record" may be judicially noticed.  *WildEarth Guardians v. U.S. Forest Serv.*, No. 1:19-cv-00203-CWD, 2020 WL 7647630, at *6 (D. Idaho Dec. 23, 2020) (quoting *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)).  This includes "[j]udicial opinions and other court records."  *Id.*  "Specifically, the Court may judicially notice

the existence of another court's decision—which includes the stated reasoning of the authoring

court as well as the date of the decision—and other filings made in the case, but not the facts

recited in that decision or other filings." *Id.*

The Court has discretion to strike "any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). "Motions to strike are construed in the light most favorable to the

nonmoving party[.]" *Miesen v. Henderson*, Case No. 1:10-cv-00404-CWD, 2017 WL 1458191,

at *4 (D. Idaho Apr. 21, 2017) (cleaned up). A matter will not be stricken unless it has "no

possible bearing on the subject matter of the litigation." *Clemmons v. Hawaii Med. Servs. Ass'n*,

273 F.R.D. 653, 656 (D. Hawaii 2011). "A matter is 'immaterial' if it 'has no essential or

important relationship to the claim for relief or the defenses being pleaded.'" *Id.* (quoting

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S.

517). A matter is impertinent if it "consists of statements that do not pertain, and are not

necessary, to the issues in question." *Id.*

2. <u>The Court takes notice of the Supreme Court Decision and denies the Motion to Strike because the Decision is material and pertinent to this matter.</u>

The Court takes judicial notice of the Supreme Court Decision under Rule 201(b)(2).

The Idaho Supreme Court issued the Decision, and its existence is not subject to reasonable

dispute. Not even Plaintiff disputes the authenticity of the Decision. Indeed, Plaintiff concedes

in his briefing that the Court would have reviewed the Supreme Court Decision at the motion for

summary judgment stage anyway. Mem. in Supp. of Mot. to Strike at 13-14 (Dkt. 15-1). Thus,

the Court is not convinced that Plaintiff would suffer prejudice if the Decision were noticed.

Still, at oral argument Plaintiff suggested that he would be prejudiced by the Court taking

notice of the Decision at this juncture because it would benefit Defendants' Motion to Dismiss.

The Court is skeptical of Plaintiff's zero-sum theory of prejudice. Plaintiff cannot convincingly

ORDER - 8

complain that he suffered prejudice because the parties should have discussed the Decision only

later, but not now.  To the extent he does, that prejudice is all but eliminated by the Court

granting his request to take judicial notice of the portion of his briefing before the Idaho Supreme

Court discussing the *England* Reservation Doctrine.  *See* Mot. for Judicial Notice (Dkt. 53).

Accordingly, the Court concludes that it may take judicial notice of the Decision.

Although the Court so concludes, it must also address whether the Decision (and Motion

to Dismiss) should be stricken as immaterial or impertinent.  Plaintiff's arguments on this front

are equally unpersuasive.  He contends that the Supreme Court Decision is immaterial and

impertinent because he strategically omitted any reference to the Decision in his Complaint.

Mem. in Supp. of Mot. to Strike at 7 (Dkt. 15-1).  Yet, he relies on the denial of his first bar

application to establish an injury for standing purposes.  *Id.*  Plaintiff cannot have it both ways.

Either the Supreme Court Decision is material to this matter because it is the cornerstone of his

injury, or it is not and Plaintiff cannot establish that he has suffered an injury sufficient to confer

standing.  The Court finds that the Decision is unquestionably material and pertinent to this

matter and will not strike it, or the Motion to Dismiss.

In the alternative, Plaintiff argues that it would be improper for the Court to consider the

Decision under Rule 12(b)(6) because it is extraneous to the pleadings.  Mem. in Supp. of Mot.

to Strike at 5 (Dkt. 15-1).  Plaintiff's argument fails for two reasons.  First, Defendants have

brought their Motion to Dismiss under both Rule 12(b)(1) and Rule 12(b)(6).  It is well-

established that a court may consider evidence outside the pleadings when assessing a factual

challenge to jurisdiction under Rule 12(b)(1).  *McCarthy v. United States*, 850 F.2d 558, 560 (9th

Cir. 1988).  Next, while Rule 12(b)(6) generally prohibits consideration of materials outside the

pleadings, a court may consider matters of judicial notice without converting a motion to dismiss

into a motion for summary judgment under Rule 12(d). *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Thus, under either Rule the Court may consider the Supreme Court Decision.

**B. Defendants' Motion to Dismiss is granted.**

Defendants raise both jurisdictional bases for dismissal under Rule 12(b)(1) and merits-based reasons for dismissal under Rule 12(b)(6). The jurisdictional arguments are addressed first because the Court has an independent obligation to assure itself its subject matter jurisdiction. *See Mashiri v. Dep't of Educ.*, 724 F.3d 1028, 1031 (9th Cir. 2013) (explaining that "federal courts have a continuing, independent obligation to determine whether subject matter jurisdiction exists"), *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) ("[P]recedent dictates that we resolve an Eleventh Amendment immunity claim before reaching the merits[.]").

    1.  <u>Legal Standards</u>

       *a.  Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) allows a complaint to be dismissed if the court lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may challenge jurisdiction facially, by asserting that the pleadings are insufficient to establish subject matter jurisdiction, or factually, by introducing extrinsic evidence that calls jurisdiction into question. *Shoshone-Bannock Tribes of Fort Hall Reservation v. United States*, 575 F. Supp. 3d 1245, 1252 (D. Idaho 2021). Defendants have raised both facial and factual attacks to the Court's subject matter jurisdiction.

With respect to a facial attack, courts presume the allegations in the complaint are true and construe them in the light most favorable to the plaintiff. *Id.* However, with a factual attack

"the court need not presume the truthfulness of the plaintiff's allegations, and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* In either case, the plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged under Rule 12(b)(1). *Id.*

　　　b. *Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss claims for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal can be predicated on either (a) "a lack of cognizable legal theory" or (b) "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). While detailed factual allegations are not required, a complaint must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Shoshone-Bannock Tribes*, 575 F. Supp. 3d at 1253 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)). Under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint. *Id.* Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be accepted as true. *Id.* (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

　　2. Plaintiff has standing because success on his claims would redress his claimed injury.

Defendants contend that Plaintiff has sued the wrong parties, and, as such, he lacks standing on redressability grounds. Mem. in Supp. of Mot. to Dismiss at 13-14 (Dkt. 8-1). They argue that the Idaho Supreme Court has the ultimate authority to promulgate and enforce the Challenged Rules. Thus, a decision from this Court declaring them unlawful and enjoining the Defendants from enforcing those rules would not cure Plaintiff's injury. *Id.* at 14.

Establishing standing requires proof of three elements: "(1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2) a fairly traceable causal connection

**ORDER - 11**

between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury." *Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1151 (D. Idaho 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Defendants only challenge Plaintiff's proof on the third element. A plaintiff cannot prove redressability if, even after a favorable decision, resolution of his injury would still depend on "unfettered choices made by independent actors not before the courts." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989).

Defendants' position is untenable. To be sure, the Idaho Supreme Court has the ultimate authority to adopt or rescind admission rules. *See* IDAHO CODE §§ 3-101, -408. Yet, the authority to promulgate rules is distinct from the authority to enforce rules. Undoubtedly, Defendants enforce bar admission rules adopted by the Supreme Court, as they have the statutory authority to apply those rules by "conduct[ing] investigation and examination of applicants." IDAHO CODE § 3-408. To the extent the Supreme Court enforces the bar admission rules, it does so on an appellate basis, reviewing findings of fact and conclusions of law drawn by the ISB under an arbitrary and capricious standard of review. I.B.C.R. 216. Granting Plaintiff's relief, then, would redress his claimed injury because it would prevent the Challenged Rules from being enforced against him in the first instance. As such, the Court finds that Plaintiff has standing.

3. <u>Defendants have not carried their burden to establish an entitlement to sovereign immunity.</u>

Defendants argue that they enjoy sovereign immunity under the Eleventh Amendment to the Constitution because they are being sued in their official capacities and Congress has not validly abrogated sovereign immunity with respect to Title II of the ADA. Mem. in Supp. of Mot. to Dismiss at 14-16 (Dkt. 8-1). Further, they contend that they are immune from Plaintiff's

RA claim because the allegations in his complaint do not establish that the ISB is a covered entity under the act.  Mem. in Supp. of Mot. to Dismiss at 18-19 (Dkt. 8-1).

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  Generally speaking, the Eleventh Amendment confers sovereign immunity, shielding states, state agencies, and state officials acting in their official capacity from suits in federal court.  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967-68 (9th Cir. 2010).  However, there are exceptions to sovereign immunity, two of which are applicable here.  First, the *Ex Parte Young* exception allows suits against government officials for prospective injunctive relief.  *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).  Second, Congress may expressly abrogate sovereign immunity if a statute allows suits to be directly brought against states in federal court.  *Id.*  "The party asserting Eleventh Amendment immunity has the burden of proving its applicability."  *Hyland v. Wonder*, 117 F.3d 405, 413 (9th Cir. 1997).

### a.  Ex Parte Young applies to Plaintiff's claims for prospective injunctive relief.

Defendants assert that *Ex Parte Young* is inapplicable because they do not have "ultimate authority" over the Challenged Rules.  Reply in Supp. of Mot. to Dismiss at 5 (Dkt. 37).  They assert that application of *Ex Parte Young* requires the state officer being sued to have "some connection with the enforcement" of the enactment being challenged.  *Id.* (citing *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082 (D. Ariz. 2013)).

**ORDER - 13**

This argument suffers from the same defects discussed above with respect to Defendants' standing challenge.

There is no serious question that Defendants are entrusted with the statutory authority to enforce the Challenged Rules as they relate to the bar admission process. *See* I.C. § 3-408 ("The board of commissioners shall have power to determine, by rules, subject to the approval of the supreme court, the qualifications and requirements for admission to the practice of the law and to conduct investigation and examination of applicants, and it shall from time to time certify to the supreme court the names of those applicants found to be qualified."). As such, the *Ex Parte Young* exception applies to Plaintiff's claims for prospective injunctive relief against the individual Defendants in their official capacities because they have "some connection" to enforcing the Challenged Rules.

> b. *Defendants may be sued under Title II of the ADA.*

Defendants assert that they enjoy sovereign immunity from Plaintiff's ADA claim because Title II of the ADA only abrogates sovereign immunity to the extent that the conduct alleged to have violated the ADA also violates a fundamental right. Mem. in Supp. of Mot. to Dismiss at 15-16 (Dkt. 8-1). Defendants' argument on this front presents a close question, as district courts within the Ninth Circuit are split on the degree to which Title II of the ADA abrogates sovereign immunity. *Compare Strojnik, v. State Bar of Arizona*, 446 F. Supp. 3d 566, 573-76 (D. Ariz. 2020) (holding that Title II does not abrogate sovereign immunity if a fundamental right is not implicated), *with McCabe v. Idaho State Bd. of Correction*, Case No. 1:17-CV-00458-CWD, 2020 WL 2797782, at *2-3 (D. Idaho May 29, 2020) (holding that Title II abrogates sovereign immunity regardless of a fundamental right violation). That being said, the majority of district courts, and the Ninth Circuit, hold that Title II of the ADA abrogates

**ORDER - 14**

sovereign immunity irrespective of a fundamental right being implicated.  *See Olson v. Allen*, Case No. 3:18-cv-001208-SB, 2019 WL 1232834, at *3 (D. Or. March 15, 2019) (collecting cases); *see also Daniel v. Levin*, 172 F. App'x 147, 149 (9th Cir. 2006) ("[T]he Eleventh Amendment does not bar ADA or RA [Rehabilitation Act] suits against state officials in their official capacities for injunctive relief or damages.").  Accordingly, the Court concludes that Defendants have not carried their burden to establish an entitlement to sovereign immunity and it has jurisdiction over Plaintiff's ADA claim.

> c.  *Plaintiff's allegations sufficiently implicate the ISB as a covered entity under the RA.*

Defendants contend that Plaintiff's allegations do not establish that the ISB is a covered entity under the RA.  Mem. in Supp. of Mot. to Dismiss at 18-19 (Dkt. 8-1).  They argue that Plaintiff's RA claim fails for two reasons: (i) the ISB is not a "program or activity" of the Idaho Supreme Court and (ii) this Court need not accept as true Plaintiff's factual allegations that the ISB receives federal funding through the Idaho Supreme Court.  *Id.*

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

29 U.S.C. § 794(a).  Relevant here, a "program or activity" is defined to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of State of local government . . . any part of which is extended Federal financial assistance."  *Id.* at § 794(b)(1)(A).  A recipient of federal funds is defined by regulation to mean any program or activity "to which Federal financial assistance is extended directly or through another recipient[.]"  45 C.F.R. § 84.3(f).

The above statutory scheme establishes three paths by which a State entity waives its sovereign immunity under the RA: (1) an entity directly receives federal funding conditioned on section 504 coverage; (2) the entity is a "program or activity" of an instrumentality of state or local government that receives federal money; or (3) the entity indirectly receives federal money through another entity receiving federal financial assistance. *See, e.g.*, *T.W. v. N.Y. State Bd. of Law Examiners*, 996 F.3d 87, 93 (2d Cir. 2021).

Plaintiff's allegations implicate paths two and three. The Court need not address the more complicated path two analysis (whether the ISB is a program or activity of the Idaho Supreme Court) because it concludes that Plaintiff's allegations clearly show that the ISB is a covered entity under path three. Plaintiff alleges that the ISB received federal financial assistance through the Idaho Supreme Court during fiscal years 2020 through 2022. Compl. ¶ 7 (Dkt. 1). For each year, he alleges a specific amount of federal funding received by the ISB. *Id.* For purposes of this facial challenge to jurisdiction under 12(b)(1), the Court assumes the allegations to be true and concludes that Plaintiff has established a plausible basis to conclude that the ISB is a covered entity under the RA.

Defendants' argument that the Court is not required to assume the truth of the allegations is unavailing. It is well-settled that all well-pleaded allegations of material fact in a complaint must be accepted as true when evaluating a motion to dismiss. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). This applies equally in the context of a 12(b)(6) motion or a facial challenge to jurisdiction under 12(b)(1). *See Shoshone-Bannock Tribes*, 575 F. Supp. 3d at 1252. An allegation of fact is well-pleaded if it sets forth a non-conclusory factual allegation as opposed to a legal conclusion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

**ORDER - 16**

Plaintiff's allegations, recited above, go further than regurgitating the elements of an RA claim, or merely stating legal conclusions. He cites to specific sums of federal money received by the ISB through the Idaho Supreme Court for three fiscal years. At this stage of litigation, these allegations are sufficient to establish that the ISB is a covered entity. To be sure, if, as Defendants argue, these allegations are untrue, Defendants could easily disprove them with limited discovery and renew their motion to dismiss on jurisdictional grounds at that time.

4. <u>The Court lacks jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.</u>

Defendants argue that Plaintiff is seeking to relitigate the denial of his first bar application. Mem. in Supp. of Mot. to Dismiss at 8 (Dkt. 8-1). Consequently, they contend that the Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine, which prohibits federal district courts from entertaining appeals of final state court decisions. *Id.*

In response, Plaintiff argues that he has pleaded his complaint in a way that evades application of *Rooker-Feldman*. Resp. to Mot. to Dismiss at 4 (Dkt. 36). He notes that *Rooker-Feldman* only extends to as-applied challenges seeking to overturn state-court decisions, and that he raises only facial challenges and seeks only prospective relief. *Id.* at 3-6.

The Court concludes that it does not have subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. Plaintiff's arguments are not persuasive and elevate form over substance. Although Plaintiff has strategically crafted his complaint to attempt to avoid application of *Rooker-Feldman*, granting his requested relief would violate the doctrine because it would require a finding that the decision denying his first bar application was unlawful.

**ORDER - 17**

*Rooker-Feldman* takes its name from a pair of United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  "At its core, the *Rooker–Feldman* doctrine stands for the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction."  *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000); see also 28 U.S.C. §1331 (granting federal district courts original jurisdiction over "federal question" cases); 28 U.S.C. § 1332 (granting federal district courts original jurisdiction over diversity cases); 28 U.S.C. § 1257 (granting the Supreme Court appellate jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State").  Accordingly, if a party seeks relief from a final decision of a state's highest court they must file a writ of certiorari with the United States Supreme Court, the only federal court with jurisdiction to consider the appeal.  *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).  This requirement extends to both formal direct appeals from state-court judgments as well as actions that amount to the "de facto equivalent" of a formal appeal.  *Id.* at 1155.

Deciding whether a federal action is a prohibited de facto appeal hinges on a careful review of the plaintiff's requested relief.  *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012).  An action is a de facto appeal when "the losing party in state court file[s] suit in federal court after the state proceedings end[], complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005).  If a court finds that a lawsuit is a prohibited de facto appeal, "the jurisdictional inquiry hinges on whether the . . . claims presented to the district court are inextricably intertwined with the state court's ruling."  *Hooper v. Brnovich*, No. 22-16764, 2022 WL 16747727, at *4 (9th Cir. November 15, 2022) (internal quotation marks and

alterations omitted). "Claims are inextricably intertwined if 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Id.* (quoting *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012)). Practically speaking, the "inextricably intertwined test" primarily applies "in cases in which the state court both promulgates and applies the rule at issue . . . and in which the loser in state court later challenges in federal court both the rule and its application." *Noel*, 341 F.3d at 1158. "Cases involving bar admission rules . . . fall in this category." *Id.*

Plaintiff's claims amount to a de facto appeal because it would be impossible for the Court to grant the relief Plaintiff requests without finding that the denial of his first bar application was unlawful. Although Plaintiff asserts that he seeks only prospective relief relating to his second bar application, his bases for relief rely exclusively on allegations about how his first bar application was denied in violation of the ADA, RA, and Fourteenth Amendment. Plaintiff cannot escape application of *Rooker-Feldman* by labelling his claims facial or prospective when those claims would, in effect, require a thorough review and rejection of the denial of his first bar application. A close look at *Feldman*, explains why – notwithstanding that Plaintiff is adamant that he seeks only facial, prospective relief – the Court ultimately concludes that his statutory claims raise a de facto appeal.

In *Feldman*, the Committee on Admissions to the District of Columbia Bar denied Feldman's application to the bar because he failed to comply with an admission rule requiring applicants to have graduated from an ABA approved law school ("the approved school rule"). 460 U.S. at 466.[6] He appealed the denial to the District of Columbia Court of Appeals, the

---

[6] Technically speaking, *Feldman* concerned two aggrieved bar applicants, Feldman and Hickey. 460 U.S. at  463. However, the U.S. Supreme Court treated their cases as essentially the same. *See generally id.*  As such, only Feldman's case is discussed here.

ORDER - 19

highest court in the jurisdiction, which denied his request to waive the approved school rule or otherwise admit him to the bar. *Id.* Feldman subsequently filed a federal lawsuit in the U.S. District Court for the District of Columbia, claiming that the approved school rule violated the due process clause of the Fifth Amendment both facially and as applied to him. *Id.* at 469 n.3. The District Court dismissed the lawsuits, concluding that it lacked jurisdiction over Feldman's claims because he sought a direct appeal of the decision of the District of Columbia Court of Appeals. *Id.* at 470. The U.S. Court of Appeals for the D.C. Circuit reversed. *Id.* at 474-75. The circuit court held that the district court correctly concluded that it lacked jurisdiction over direct appeals from the final judgment of a state's highest court but reasoned that the denial of Feldman's application was an administrative, not judicial, act. *Id.* Accordingly, it concluded that the district court had jurisdiction over Feldman's claims because they challenged administrative action. *Id.*

The U.S. Supreme Court reversed the D.C. Circuit. *Id.* at 463. First, the Court held that an appeal of the final decision of a state's highest court could only be had, if at all, in the Supreme Court of the United States. *Id.* at 476. Next, the Court held that the decision to deny a bar application was judicial in nature because it required a court to "investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist." *Id.* at 479 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)). Yet, the conclusion that denying a bar application is a judicial act did not foreclose Feldman's ability to bring some of his claims in federal district court. *Id.* at 482.

The Court laid out a framework to determine which claims challenged judicial action, requiring an appeal to the U.S. Supreme Court, and which claims challenged legislative, administrative, or ministerial action, which district courts had jurisdiction to consider. *Id.* at 482-

86.  The Court drew a distinction between facial challenges to bar admission rules and as-applied

challenges, stating:

> United States District Courts, therefore, have subject matter jurisdiction over
> general challenges to state bar rules, promulgated by state courts in non-judicial
> proceedings, which do not require review of a final state court judgment in a
> particular case. They do not have jurisdiction, however, over challenges to state
> court decisions in particular cases arising out of judicial proceedings even if those
> challenges allege that the state court's action was unconstitutional. Review of
> those decision may be had only in this Court.

*Id.* at 486.  Put simply, a facial challenge to a bar admission rule does not amount to a de facto

appeal because it does not challenge judicial action.  In contrast, an as-applied challenge to the

rules requires a federal district court to review how a state court applied the law to the

circumstances of the plaintiff's case, amounting to a de facto appeal of the state court decision.

Here, Plaintiff is unequivocal that his challenges are purely facial.  This raises the

question: must the Court uncritically accept Plaintiff's labeling of his claims, or may it look to

the available evidence to determine if Plaintiff is really raising as-applied challenges?  The Court

concludes that it is not required to accept Plaintiff's labeling of his claims as determinative.

To begin, the *Rooker-Feldman* argument brought by Defendants raises a factual

challenge to the Court's subject matter jurisdiction under Rule 12(b)(1).  As such, the Court is

not bound to accept the allegations in Plaintiff's complaint as true and may consider evidence

outside the Complaint to resolve the jurisdictional dispute.  *White v. Lee*, 227 F.3d 1214, 1242

(9th Cir. 2000).  This means the Court can consider any evidence to determine if the Plaintiff's

claims, despite being labelled facial challenges, actually raise as-applied challenges to the rules.

Other courts agree that *Rooker-Feldman* does not place form above substance, and that

the effect of a Plaintiff's claims, not just the labelling, is material to determining if an action is a

de facto appeal.  *See Eicherly v. Moss*, Case No.: SACV 16-02233-CJC(KESx), 2018 WL

813361, at *2 (C.D. Cal. Fed. 1, 2018) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 902 (9th

Cir. 2003) ("the alleged injuries are the direct result of the state court judgments and their requested relief asks the Court to issue declarations directly adverse to those state court decisions—it 'is difficult to imagine what remedy the district court could award in this case that would not eviscerate the state court's judgment.'"); *Keyter v. 230 Gov't Officers*, 372 F. Supp. 2d 604, 611 (W.D. Wash. 2005) (explaining that although the plaintiff did "not explicitly seek review of the state court decision *eo nominee.* He is content to simply assert that the [result of the state decision] was wrong, unfair, immoral, in violation of his rights, and illegal" and the court "would have to review all the evidence that was submitted at trial in the [state court] action to determine whether the [result] was incorrect."), *aff'd*, 182 F. App'x 684 (9th Cir. 2006)); *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("The doctrine applies only in 'limited circumstances,' . . . where a party *in effect* seeks to take an appeal of an unfavorable state-court decision") (internal citation omitted) (emphasis added).

Although not binding, the Court finds *Lawrence v. Welch*, 531 F.3d 364 (6th Cir. 2008) persuasive insofar as it is factually analogous to this case. There, an aggrieved bar applicant sued state bar officials, claiming that the officials violated his First and Fourteenth Amendment rights by denying his bar application and that they were likely to do so again with respect to his second bar application. *Id.* at 367. He sought declaratory and injunctive relief either requiring the bar officials to issue him a license to practice law or, in the alternative, prospectively restraining the bar officials from denying his second application in the same manner as they denied his first application. *Id.* The Sixth Circuit concluded that both claims were de facto appeals barred by *Rooker-Feldman. Id.* at 372. Even though the applicant's second claim sought prospective relief, the court reasoned that "examined for its substance rather than its form, . . . [the] second claim is premised on the same alleged injury as his first." *Id.* at 370. Accordingly,

the court concluded that the claim was a de facto appeal because "the district court could not have concluded that Lawrence was entitled to the prospective relief he seeks—that is, an order enjoining defendants from doing what they did before—without first finding that defendant's previous decision was unconstitutional." *Id.*

Like in *Lawrence*, Plaintiff here is seeking invalidation of bar admission rules and prospective injunctive relief to prevent Defendants from processing his second bar application in the same way they processed his first. Granting this relief necessarily would force the Court to both review the denial of Plaintiff's first bar application and find that the denial was unlawful. It is apparent that Plaintiff's claims seek, in effect, to have the Court review and reject the denial of his first bar application. For instance, Plaintiff filed this action shortly after the decision to deny his first application was released. *See* Compl. (Dkt. 1) (filed February 28, 2022), Mot. to Dismiss, Ex. A (Dkt. 8-2) (Supreme Court Order issued February 4, 2022). At the time of filing, Plaintiff had not yet reapplied to sit for the Idaho bar exam. Compl. ¶ 49 (Dkt. 1). The timing of the filing was not coincidental. Filing the lawsuit so close in time to the denial suggests that the lawsuit is in fact backward-looking, to redress the denial. *See Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 319 (4th Cir. 2003) ("The timing of the filing of the complaint in federal court is a relevant consideration, but it is not outcome determinative.").

It is also clear from Plaintiff's allegations in his complaint that he seeks review and rejection of the decision denying his first bar application. Although Plaintiff asserts that his relief is forward-looking, this is belied by the fact that many of the allegations in his complaint reference his first bar application. Plaintiff dedicates a significant portion of his complaint to allegations of how Defendants behaved unlawfully during his first bar application. *See* Compl. ¶¶ 25-48 (Dkt. 1). This includes allegations of unlawful conduct that has no apparent

**ORDER - 23**

relationship to the facial text of any of the Challenged Rules. *See, e.g.*, *id.* ¶ 28 (alleging that Defendants reasons for denying his first bar application were "pretext for discriminatory animus [they] have towards Plaintiff's mental health diagnoses"); *id.* ¶ 38 (allegation that Defendants obtained his medical records through false representations); *id.* ¶¶ 40, 43 (alleging various instances of Defendants committing perjury during his first application process). These allegations, if true, are concerning, but they do not fit within the mold of a facial challenge. *See Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1245 (10th Cir. 2011) ("The nature of a challenge depends on how the *plaintiffs* elect to proceed—whether they seek to vindicate their own rights based on their own circumstances (as-applied) or whether they seek to invalidate an [enactment] based on how it affects them as well as other conceivable parties (facial).") (emphasis in original).

Moreover, Plaintiff's theory of facial invalidity is predicated on how the Challenged Rules were enforced against him during his first application. With respect to his ADA claim, Plaintiff contends that the Challenged Rules are invalid because those rules (i) impose unlawful eligibility criteria by focusing on mental health diagnoses rather than conduct demonstrating that an applicant is a direct threat to the health and safety of others; (ii) impose unlawful eligibility criteria by forcing applicants with mental health diagnoses to provide detailed psychiatric records and submit to additional psychiatric evaluations and interrogations; and (iii) subject persons with a disabilities to unlawful surcharges because they must pay for supplemental psychiatric evaluations. Compl. ¶¶ 59-73; *see also id.* at 25-26.

Despite his contention that the Challenged Rules are facially invalid, he spends little time explaining how the text of those rules produces any of the above discriminatory results. Instead, Plaintiff supports his contentions with anecdotes from his first bar application. He focuses on

**ORDER - 24**

Defendants' failure to provide evidence that he exhibited conduct that constituted a direct threat to the health and safety of others during his first bar application.  *Id.* ¶¶ 34, 36, 48, 50-51, 65, 67-68, 72-73.  Plaintiff does not reference any text in any Challenged Rule that requires applicants with mental disabilities to provide "detailed medical documentation of an applicant's psychiatric history" or to submit to "additional psychiatric examinations."  *See id.* at 25, 27-28.  Rather, he knows that the Defendants engage in this type of conduct because that is what they required of him during the first bar application.  *Id.* ¶¶ 50, 64, 67-68.  Likewise, Plaintiff points to no text that requires disabled applicants to pay any additional costs during the application process and points only to his experience during his first bar application for support.  *Id.* ¶ 35, 50, 66.

Similarly, Plaintiff's RA claim is entirely based on allegations that Defendants unlawfully discriminated against him during his first bar application process.  He states that Defendants' "actions, or omissions to act violated [Plaintiff's] rights under the Rehabilitation Act by discriminating against him on the basis of a disability"; Defendants' "discriminatory conduct against [Plaintiff] was deliberate and intentional, and/or in reckless disregard of [Plaintiff's] rights"; and that Plaintiff "has suffered damages due to the Defendants' violations of the Rehabilitation Act."  Compl. ¶¶ 87-89 (Dkt. 1).  Plaintiff also requests an award of compensatory damages related to his RA claim, which cannot be squared with his assertion that he seeks only prospective relief.[7]  *Id.* at 28.

Finally, Plaintiff's Fourteenth Amendment claim is predicated on the same sort of as-applied allegations as his statutory claims.  Plaintiff does not dispute that ensuring minimum

---

[7] Plaintiff's Motion to Amend seeks to remove his request for compensatory damages, purportedly to allow this matter to proceed to a bench trial rather than a jury trial.  Mot. to Amend (Dkt. 30).  Still, the Court cannot ignore the fact that removing the compensatory damages claim would also benefit Plaintiff's defense to the *Rooker-Feldman* doctrine.

competency to practice law is a legitimate government purpose under rational basis review. Compl. ¶ 94 (Dkt. 1).  However, he argues that the Challenged Rules are not rationally related to that purpose because admitted lawyers would not be disbarred for conduct that disqualifies applicants to the bar.  *Id.* ¶¶ 95-97.  He also argues that Defendants do not ask about other potentially debilitating physical conditions when considering bar applications.  *Id.* ¶ 98.  Yet, as with his statutory claims, Plaintiff does not point to the text of any rule to support his contention and relies, instead, on his personal experience during his first bar application.[8]

In sum, the Court concludes that Plaintiff is bringing a prohibited de facto appeal of his first bar application.  Although he is not challenging the Supreme Court Decision in name, he complains of an injury caused by that judgment and his requested relief would require the Court to both review the denial of his first bar application and declare that it was unlawful.  The Court does not have jurisdiction and Plaintiff's complaint must be dismissed.

5. <u>In the alternative, Plaintiff's claims must be dismissed because they do not state a plausible basis for relief under the high standard for facial challenges.</u>

Alternatively, the Court considers whether – if it did have subject matter over Plaintiff's claims – Plaintiff can meet the high standard for a facial challenge.  Defendants argue that Plaintiff's complaint should be dismissed because none of his claims state a plausible basis for

---

[8] The Court rejects Plaintiff's argument that he included a detailed explication of the circumstances surrounding the denial of his first bar application only to comply with the pleading requirement of demonstrating a likelihood of future injury.  *See* Resp. to Def. Mot. to Dismiss (Dkt. 36) at 5-6.  While such detailed pleading may be necessary in an as-applied challenge to demonstrate the likelihood of repeated conduct that would cause injury, it is superfluous to a facial challenge where it is understood that rules that operate to cause injury on one occasion, if left unchanged, will operate to cause the same injury on subsequent occasions.  The case cited by Plaintiff in support of his position – *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011) – did not involve a facial challenge, and thus, offers little support for his argument.  And, irrespective of how detailed Plaintiff's allegations of injury need to be to bring his facial challenges, he undoubtedly relies on how the Board processed his first application for more than demonstrating injury.  Plaintiff supports each of his claims with anecdotes from his first bar application.  *See, e.g.*, Compl. ¶¶ 72, 87-89, 98.

ORDER - 26

relief under the "no set of circumstances" test for facial challenges articulated in *United States v. Salerno*, 481 U.S. 739 (1987).  Mem. in Supp. of Mot. to Dismiss at 7-8 (Dkt. 8-1).  Plaintiff did not directly address the *Salerno* standard in his Response to the Motion to Dismiss but asserted during oral argument that his claims survive that standard.[9]

In *Salerno*, the Supreme Court enunciated the "heavy burden" a challenger must meet to have a legislative act declared facially unconstitutional.  *See* 481 U.S. at 745.  The Court stated, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *Id.*  The Court explained, "[t]he fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."  *Id.*

Then, in *Reno v. Flores*, 507 U.S. 292 (1993), the Court extended this standard to facial challenges to federal statutes.  507 U.S. at 301 (explaining that the *Salerno* standard applied "to both the constitutional challenges . . . and the statutory challenge").  Although the *Salerno* standard has been criticized as dicta, the Ninth Circuit has reaffirmed that it is the operative standard for facial challenges "until a majority of Supreme Court clearly directs" otherwise.  *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467-68 (9th Cir. 2001).

Having thoroughly reviewed *Salerno's* progeny, the Court concludes that the *Salerno* standard applies *both* to a claim that a legislative enactment is facially invalid under the United States Constitution *and* federal statute.  The Supreme Court has said as much, although in dicta.  *See Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (applying the *Salerno* standard and

---

[9] Plaintiff also provided a notice of supplemental authority to the court with several cases discussing application of the *Salerno* standard to claims asserting facial violations of the ADA or RA.  (Dkt. 54).

**ORDER - 27**

concluding that the respondents "could not sustain their burden even if they showed that a possible application of the rule (in concert with another statute or regulation) violated federal law."). Additionally, the Ninth Circuit recently has applied the *Salerno* standard to a claim that a regulation was facially invalid under the Administrative Procedures Act. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 599 (9th Cir. 2018) (citing *Reno*, 507 U.S. at 301). It has also applied the *Salerno* standard to a claim that a local zoning ordinance facially violated 47 U.S.C. § 253(a). *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 543 F.3d 571, 579 (9th Cir. 2008). This approach is consistent with the approach of other jurisdictions. *See, e.g.*, *Children's Health Defense v. Fed. Commc'n Comm'n*, 25 F.4th 1045, 1051-52 (D.C. Cir. 2022) (applying the *Salerno* standard to claims that an FCC regulation facially violated the ADA and Fair Housing Act); *Assoc. Bldrs. & Contractors of Texas, Inc. v. NLRB*, 826 F.3d 215, 220 (5th Cir. 2016) (applying the *Salerno* standard to claims that regulation facially violated the National Labor Relations Act and Administrative Procedures Act); *Public Lands Council v. Babbit*, 167 F.3d 1287, 1293 (10th Cir. 1999) (applying the *Salerno* standard to a claim that a regulation facially violated the APA). Finally, there is at least one district court in the Ninth Circuit that has applied the *Salerno* standard to the type of challenge Plaintiff brings here, a claim that a rule facially violates the ADA. *See Yount v. Regent Univ.*, No. CV 08-8011-PCT-DGC, 2008 WL 4104102, at *3 (D. Ariz. Aug. 22, 2008) (denying a plaintiff's motion for summary judgment because his claims that a university policy facially violated the ADA did not meet the *Salerno* standard).[10]

---

[10] Plaintiff cites one case to the contrary, *New Directions Treatment Services v. City of Reading*, 490 F.3d 293 (3d Cir. 2007), in his Notice of Supplemental Authority (Dkt. 54). That case does not squarely address the question of whether *Salerno*'s "no set of circumstances" test applies to claims asserting facial challenges under the ADA. Indeed, *New Directions* does not cite to *Salerno*, *Reno*, or their progeny. *See* 490 F.3d at 300-01. Rather, the Third Circuit held that the

Applying *Salerno* here, the Court asks if the allegations in Plaintiff's complaint plausibly assert that there is no set of circumstances under which the Challenged Rules – on their face – would comply with the ADA, RA, or Fourteenth Amendment.

### a. *Plaintiff's statutory claims cannot survive Salerno*

Courts apply the same analysis to disability discrimination claims arising under either the ADA or RA. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[11] The implementing regulations for this provision provide, in pertinent part, that a "public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability."  28 C.F.R. §

---

district court erred in applying rational basis review to the plaintiff's equal protection and ADA claims. *Id.* at 301. Thus, *New Directions* does not undermine the Court's conclusion that Plaintiff, in asserting that the Challenged Rules are facially invalid, must show that there is no set of circumstances under which they could be enforced compliant with the ADA, RA, or Fourteenth Amendment.

[11] Title II of the ADA is substantially the same as Section 504 of the RA, which provides:

> No otherwise qualified individual with a disability . . . shall, solely by reasons of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794. As such, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and Rehabilitation Act." *Zukle*, 166 F.3d at 1045 n.11 (citing 42 U.S.C. § 12133). Since Plaintiff principally focuses on the ADA, the Court does the same with the understanding that an ADA violation would also qualify as an RA violation.

**ORDER - 29**

35.130(b)(6).  Additionally, a public entity may not "impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  *Id.* § 35.130(b)(8).

Plaintiff claims that the Challenged Rules are facially invalid under the ADA and RA primarily because they grant Defendants "unfettered discretion" to discriminate against, and deny bar membership, to applicants with mental disabilities based merely on their status as disabled, as opposed to an objective determination that they pose a direct threat to the health and safety of others (the operative exception under the ADA).  *See* Compl. at ¶¶ 60, 69-71.  But it is the very discretion about which Plaintiff complains that dooms his facial challenge.  Inherent in the discretion conferred by the Challenged Rules is the wide range of outcomes that may result from the exercise of that discretion.  And if a wide range of outcomes may result, the *Salerno* standard that "no set of circumstances exists" under which the Challenged Rules would be valid under the ADA and RA is very difficult to surmount.  Plaintiff cannot do so here.

Addressing I.B.C.R. 204 and 208 first, these rules merely describe the Defendants' investigatory authority over bar applicants.  Rule 204 requires an Applicant to fully disclose all information requested by the ISB or CF Committee.  Critically, Rule 204 does not facially reference persons with mental disabilities or request their medical records.  To the extent that Defendants used this Rule to extract sensitive medical records from Plaintiff under threat of denying his application, he might raise a plausible claim of disability discrimination as-applied to him.  But his facial challenge to this rule fails.  No doubt, a set of circumstances exists where Rule 204 could be enforced in a way that does not violate the ADA or RA.  For instance, Rule

**ORDER - 30**

204 can serve as a basis to request that a bar applicant disclose records of previous felony convictions.  This would not violate the ADA or RA.

The same is true for Rule 208, which states that the ISB "shall investigate each Applicant's character and fitness to practice law in such manner as the Board deems appropriate."  I.B.C.R. 208(a).  The Rule also requires an applicant "to submit to a character and fitness examination regarding any matter deemed relevant by the Board, CF Committee or Bar Counsel[.]"  I.B.C.R. 208(c).  Like Rule 204, nothing on the face of Rule 208 references persons with mental disabilities or categorically requires them to submit to a character and fitness examination.  Rather, the rule confers discretion upon the Board to refer an applicant for a character and fitness examination.  While Defendants could have abused their discretion under Rule 208 to discriminate against Plaintiff and deny his first bar application in the ways he describes, at most this amounts to another as-applied challenge.  On the other hand, his facial challenge to Rule 208 fails because there is a set of circumstances where Rule 208 may be applied in a way that does not violate the ADA or RA.  Again, for instance, the CF committee and Board legitimately could invoke Rule 208 to examine an applicant with a prior criminal record without offending the ADA or RA.

Rule 210 – and specifically subsections (a)(3)(H) and (a)(3)(I) – presents a closer question and is the focus of Plaintiff's complaint.  Rule 210 describes standards for disqualification of an applicant on character and fitness grounds.  Explicitly, Rule 210 focuses the character and fitness inquiry on the applicant's "conduct" in (i) failing to exercise substantial self-control or (ii) in being mentally or emotionally unstable.  *Id.*  Conversely, Rule 210 does not reference an applicant's *status* as a drug addict, alcoholic, or mentally disabled person.  This dichotomy defeats Plaintiff's facial challenge.

**ORDER - 31**

Regarding Rule 210(a)(3)(H), it permits disqualification of an applicant for conduct demonstrating a lack of substantial self-control.  I.B.C.R. 210(a)(3)(H).  The rule cites improper use of drugs or excessive use of alcohol as examples of such conduct.  *Id.*  To be sure, drug and alcohol addiction are recognized disabilities under the ADA.  *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (drug addiction); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1187 (9th Cir. 2001) (alcoholism).  However, the text of the Rule does not categorically exclude applicants based on their status as a drug addict or alcoholic.  As such, there are certainly ways in which the Rule could be applied in a way that violates the ADA, but there are also certainly ways the Rule could be applied consistent with the ADA.  For instance, an individual who currently uses illegal drugs is not considered disabled under the ADA.  42 U.S.C. § 12114(a) ("a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.").  Thus, if Rule 210(a)(3)(H) were applied to disqualify an applicant who failed to exercise substantial self-control by engaging in the present use of illegal drugs, such action would not run afoul of the ADA or the RA.  Whereas, if Rule 210(a)(3)(H) were applied to disqualify a former drug abuser, who no longer uses drugs, such application would violate the ADA and the RA.  In short, Plaintiff's facial challenge to Rule 210(a)(3)(H) fails because there are undoubtedly circumstances in which the Rule could be applied consistently with the ADA and RA.

The same can be said of Rule 210(a)(3)(I).  That Rule permits disqualification of an applicant for conduct that substantially evidences mental or emotional instability to the extent that the applicant is not suited to practice law.  I.B.C.R. 210(a)(3)(I).  As with subsection (H), this Rule focuses on conduct, not status.  As such, there are any number of circumstances under which the Rule could be applied consistently with the ADA and RA.  For instance, a non-

disabled, but ill-tempered applicant could be disqualified under subsection (I) for exhibiting

conduct that falls short of the baseline civility required of the legal profession.  In contrast, an

applicant diagnosed with a mental disability or illness, say depression, but who nonetheless is

mentally and emotionally stable, suffers no categorical disqualification. Accordingly, there is a

set of circumstances where Rule 210(a)(3)(I) complies with the ADA and RA.

Plaintiff counters by alleging that – although Rule 210 proscribes "conduct" – it is

nonetheless facially discriminatory when read in conjunction with "Defendants' internal-written

policies for enforcement" of Rule 210.  Compl. Ex. A at 14-16.  He claims that these so-called

enforcement policies define "mentally or emotionally unstable" applicants using criteria that is

overbroad and prohibited by the ADA.  Compl. at ¶¶ 70-71.  According to him, these flawed

definitions allow the CF Committee and Board to label applicants as "mentally or emotionally

unstable" – based only upon their uninformed opinion – and categorically disqualify them

without any examination of their conduct whatsoever.  *Id.*  But critically, these are not

enforcement polices at all.  Instead, the document Plaintiff cites is a "Survival Guide for

Lawyers," so-titled and directed at lawyers under the Lawyer Assistance Program.  Compl. Ex. A

at 1-3.  Far from being implementing definitions that allow the Board and CF Committee to

shortcut disqualification without examination of an applicant's conduct, the definitions of

"substance abuse" and "mental health issues" therein are merely exemplary guidance for bar

applicants to disclose relevant information.  *Id.* at 14 ("Bar applicants are required to fully

disclose information about the following topics. . .").  Further, even if the Court were to credit

Plaintiff's assertion that the document is a written policy for enforcement of admission rules,

nowhere in the document does it mention Rule 210.  And, far from requiring a categorical

exclusion of mentally disabled applicants, the document expressly states "[a]n applicant's

**ORDER - 33**

mistakes, poor choices, wrongdoings, diseases, or disorders are not necessarily an insurmountable hurdle or barrier to bar admission." *Id.* at 15.  Accordingly, the document does not detract from Rule 210's focus on applicant conduct and does nothing to support Plaintiff's facial challenge to it.

Finally, Plaintiff's reliance on the ADA's "direct threat" exception standard is misplaced. *See* 28 C.F.R. § 35.139.  Repeatedly, Plaintiff claims that the Challenged Rules, and specifically Rule 210(a)(3)(I), facially violate the ADA because they permit the Board and CF Committee to evade an objective, medical determination that the applicant poses a "direct threat to the health and safety of others," as required by the ADA.  *See* Compl. at ¶¶ 18-19, 35-36, 48, 51, 61, 65, 67, 69, 72-73.  But again, this is not an as-applied challenge for which the "direct threat" standard must be directly met.[12]  Instead, this is a facial challenge for which the *Salerno* standard must be met.  Under the *Salerno* standard, and as it relates to the "direct threat" exception, the relevant inquiry is whether there is "no set of circumstances" where the application of the Challenged Rules could comply with the "direct threat" exception standard, and thus, the ADA.

As discussed *supra*, Rule 210(a)(3)(I) affords the Board and CF Committee discretion to opine on an applicant's mental or emotional stability.  In some cases, like the instant case, their opinion that the applicant is not mentally or emotionally stable will *not* be supported by facts that *also* establish that the applicant is a direct threat to the health and safety of others.  In that case, application of the Challenged Rules arguably would violate the ADA.  But in some cases, their opinion *will* be supported by facts that *also* meet that "direct threat" exception standard.  For instance, an applicant might have bipolar disorder that causes instability and aggression, and

---

[12] Indeed, the "direct threat" exception is an affirmative defense to an individual ADA claim. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

have a recent history of assaultive conduct.  In that case, both the Rule 210(a)(3)(I) and the "direct threat" exception standards would be met, and the application of the Challenged Rules would comply with the ADA.  Thus, as it relates to the "direct threat" exception, the Challenged Rules satisfy the *Salerno* standard.

That Plaintiff's facial challenge under the ADA and RA falls short of satisfying his "heavy burden" under *Salerno* is made abundantly clear when juxtaposed against successful facial challenges in other cases.  For instance, in *Lovel v. Chandler*, 303 F.3d 1039 (9th Cir. 2002), the Ninth Circuit held that Hawaii's regulations for eligibility in a state-run health insurance program facially violated the ADA and RA because the regulations explicitly stated disabled individuals were ineligible.  303 F.3d at 1045, 1052.  Likewise, in *Bay Area Research and Treatment, Inc. v. City of Antioch*, 179 F.3d 725 (9th Cir. 1999), the Ninth Circuit held that a zoning ordinance prohibiting the operation of a methadone clinic within 500 feet of a residential property to be facially discriminatory because it categorically excluded clinics providing services to individuals with drug addictions.  179 F.3d at 733-34.  Finally, in *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), the Ninth Circuit held that Hawaii's statutes establishing a mandatory quarantine procedure for all dogs entering the state was per se discriminatory because it did not have any exception for guide dogs, and thus categorically excluded visually impaired individuals from enjoying public services.  81 F.3d at 1484-85.

In each of those cases, unlike here, the enactments facially violated the ADA because the text of the rule created a categorical exclusion for individuals with disabilities.  None of the Challenged Rules do the same.  To be sure, Plaintiff's allegations show that the Challenged Rules could be applied in way that violates the ADA and RA, but that is not enough to bear the burden he must.  Thus, the Court is compelled to dismiss the ADA and RA claims.

**ORDER - 35**

>    *b.   Plaintiff's constitutional claim cannot survive Salerno*

In his constitutional claim, Plaintiff asserts that Rules 210(a)(3)(H) and 210(a)(3)(I) are facially invalid under the Fourteenth Amendment because those rules are not rationally related to a legitimate government purpose.  Compl. ¶¶ 93-99 (Dkt. 1).  He concedes that regulating the practice of law is a legitimate government purpose.  *Id.* ¶¶ 94-95.  Notwithstanding, he raises two arguments as to why those Rules are not rationally related to that purpose: (i) attorneys already admitted to the Idaho State Bar are treated differently than applicants suffering from similar mental health or substance abuse problems and (ii) Defendants do not ask applicants about potentially dangerous physical disabilities that would affect their ability to practice law.  *Id.* ¶¶ 97-98.  Neither argument is persuasive nor meets the high bar of the *Salerno* test for facial challenges.

As to the first argument, Plaintiff again relies on publications of the Idaho Lawyers Assistance Program to demonstrate what he views as an impermissible double standard in the treatment of bar applicants compared to admitted attorneys.  Resp. to Mot. to Dismiss at 23-31 (Dkt. 36); Exs. C-E (Dkt. 36-1).  While a bar applicant may be disqualified for struggling with mental health issues or substance abuse, a licensed attorney suffering from the same ailments is not disbarred but offered resources from the Lawyers Assistance Program.  *Id.*  In other words, Plaintiff contends that there is no rational basis to enforce admission rules that disqualify applicants for conduct that, if they were admitted, would not result in them being disbarred.  *Id.*

Yet, Plaintiff's arguments are belied by his attached exhibits, which articulate a rational basis for this differential treatment.  The first enumerated purpose of the Lawyers Assistance Program is to "[p]rotect the interests of clients from harm caused by impaired lawyers[.]"  Ex. E at 2 (Dkt. 36-1); *see also* I.B.C.R. 1201 (containing an identical definition of purposes for the

Lawyers Assistance Program).  Unlike admitted attorneys, applicants to the bar do not have

attorney-client relationships, so there is a rational reason to treat them differently.  Namely, it is

reasonable to assist admitted attorneys, and not disbar them under the standard applied to

applicants, because their clients otherwise would suffer.  Absent assistance, clients either would

be represented by an impaired attorney, or be forced to find a new attorney and sacrifice the time

and money devoted to the prior representation.  Reasonable minds may differ on whether it is

sound policy to allocate more resources to admitted attorneys struggling from mental health or

substance abuse problems than bar applicants, but that does not make the Challenged Rules

irrational.

Plaintiff's second argument is also unsuccessful.  He contends that Rules 210(a)(3)(H)

and 210(a)(3)(I) are not rationally related to a legitimate purpose because Defendants do not ask

applicants about physical ailments with potentially dangerous psychiatric comorbidities.  Compl.

¶ 98 (Dkt. 1), Resp. to Mot. to Dismiss at 29 (Dkt. 36).  Again, Plaintiff's challenges are

ostensibly facial, but he does not point to any language in the Rules to support his contentions.

Moreover, even if the Court were to assume that Defendants do not ask about physical

disabilities with potential mental comorbidities, and that failing to ask is ipso facto irrational,

Plaintiff would still not plausibly carry his burden to show that there is no set of circumstances

under which the Challenged Rules could be rationally related to their purpose.  The Challenged

Rules do not preclude Defendants from conducting an inquiry into an applicant's conduct that

demonstrates a lack of mental or emotional stability to practice law, whether that conduct is

rooted in a mental disability, physical disability, or independent of any diagnosed health

condition.

ORDER - 37

In sum, Plaintiff's constitutional challenge does not state a plausible basis for relief.  His allegations do not show that there is no set of circumstances under which the Challenged Rules would be valid, and he does not even plausibly state that the challenged rules are irrational in light of their purpose.  This claim is dismissed.

6.  <u>The Court does not need to reach Defendants' other arguments.</u>

The Court concludes that Plaintiff's complaint must be dismissed under *Rooker-Feldman* or, in the alternative, for failing to state a plausible basis for relief on his facial challenges under *Salerno*.  Unlike jurisdictional issues, which the Court must address, the Court is not obligated to address Defendants' other arguments on the merits.  This includes Defendants' res judicata argument.  As to the res judicata argument, at oral argument Plaintiff asked the Court for an opportunity to submit additional materials to rebut that defense.  Plaintiff subsequently filed a motion, requesting the Court to take judicial notice of the proposed materials and determine that Plaintiff had preserved his federal challenges under the *England* Reservation Doctrine.  Mot. for Judicial Notice (Dkt. 53).  While the Court takes judicial notice of Plaintiff's pleadings before the Idaho Supreme Court under Federal Rule of Evidence 201(b)(2), it denies Plaintiff's request for a determination of the *England* reservation argument as moot since the Court finds that res judicata is not dispositive in this matter.

**C. Plaintiff's other Motions are denied.**

1.  <u>Plaintiff's Motion to Amend is denied because it is futile.</u>

Denial of a motion for leave to amend is appropriate when the proposed amendment would be futile. *V.V.V. & Son Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 547 (9th Cir. 2019).  Here, Plaintiff proposes to amend his complaint by (i) removing his claim for compensatory damages for an RA violation, (ii) adding in the date he submitted his second bar

application, and (iii) removing his demand for a jury trial.  Mot. to Amend (Dkt. 30).  None of these proposed amendments would cure the jurisdictional defects under *Rooker-Feldman* or add support to Plaintiff's facial challenges.  As such, the amendments are futile, and the Motion is denied.

    2.  <u>Plaintiff's other motions are moot</u>

Plaintiff's remaining motions, the Motion to Waive Jury Demand and the Motion for Sur-reply, are denied as moot, given that the Court grants Defendants' Motion to Dismiss.

### III. <u>CONCLUSION</u>

In Idaho, "the practice of the legal profession is a privilege granted by the state and not a natural right of the individual."  IDAHO CODE § 3-401.  The Defendants who dispense this privilege by applying the rules of admission certainly are fallible.  However, because of the limited jurisdiction of this Court, Plaintiff cannot relitigate their denial of his first bar application here.  Yet, that is what his lawsuit, in substance, attempts to do.  To the extent it does not – and instead only challenges the text of bar admission rules and how they might prospectively operate to discriminate against him – Plaintiff cannot satisfy the heavy burden for invalidating those rules.

The burden is heavy for good reason.  The Idaho State legislature empowers the Board to promulgate bar admission rules.  IDAHO CODE § 3-408.  The Board is a self-governing agency that consists of 5 elected members.  IDAHO CODE § 3-402.  The rules that the Board promulgates are subject to review and approval by the Idaho Supreme Court.  *Id.*  Specifically, the Supreme Court adopts the rules by order.  I.B.C.R., Preamble.  The Challenged Rules, then, being the product of this combined state legislative and judicial action and the independent work of many individual actors, should not be lightly second-guessed or disturbed by a federal court.

ORDER - 39

This is not to say that the denial of Plaintiff's first bar application was not terribly disappointing to him on a personal and professional level. Or that he does not have serious complaints with how Defendants handled his application. Or that he does not have significant concerns about whether he was treated fairly during the application process. It is only to say that this federal Court cannot grant him the legal remedy he seeks based on the record before it.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Waive Jury Demand (Dkt. 13) is DENIED as moot;

2. Plaintiff's Motion to Strike (Dkt. 15) is DENIED;

3. Defendants' Motion to Dismiss (Dkt. 8) is GRANTED and Plaintiff's Complaint (Dkt. 1) is DISMISSED, with prejudice;[13]

4. Plaintiff's Motion to Amend (Dkt. 30) is DENIED;

5. Plaintiff's Motion for Sur-reply (Dkt. 38) is DENIED as moot; and

6. Plaintiff's Motion for Judicial Notice (Dkt. 53) is GRANTED in part, insofar as the Court takes judicial notice of Plaintiff's excerpted pleadings before the Idaho Supreme Court, but DENIED in part, as the Court concludes Plaintiff's request for a determination of the *England* Reservation Doctrine is moot.

DATED: November 29, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

---

[13] The dismissal is with prejudice because the Court concludes that no amendment would cure the jurisdictional defects discussed above. *See Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) ("[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

ORDER - 40